JOSEPH ADMIRE, Plaintiff, *v.* BERTHA ADMIRE, Defendant.

Supreme Court, Special Term, Albany County, June 29, 1943.

*Joseph A. Romano* and *Benjamin Marsicano* for plaintiff.
*Samuel E. Goldstein* for defendant.

Bergan, J. Plaintiff sues his wife for a divorce. The parties separated in July, 1939, and since then continuously lived apart. A child was born to defendant February 20, 1942. The complaint, in addition to allegations of adultery, alleges that this child is not the legitimate child of the parties to the marriage and an adjudication to this effect is sought. Defendant denies the adultery and tenders a separate defense that the child born in 1942 is the child of plaintiff. The issues were tried without a jury.

The proof strongly supports plaintiff's allegations of adultery. Defendant's sister, her husband, and the son of the parties, a boy eleven years old, all testified to acts of adultery. While the sister and her husband might be treated as hostile to defendant, their testimony is persuasive, fits into the pattern of events, and is harmonious with the testimony of the son. No member of her family, or any person acquainted with the life and actions of defendant during the period in controversy, has been called to sustain her denials of the adultery — denials which are not much more than categorical and are not convincing. Her testimony in dealing with circumstantial facts, such as the management and title of the rooming house property where defendant lives, title of which is claimed by defendant, but was and apparently still is of record in the name of the man with whom the infidelity is charged and who also rooms there, is not candid. I conclude that plaintiff has fairly met the burden of proof upon the issue of adultery and is entitled to a divorce.

The legitimacy of the child born February 20, 1942, however, presents quite a different kind of problem. Defendant testified that within the period of gestation and at other times plaintiff visited her while the parties were separated, and had sexual intercourse with her. Visits to the home of defendant are admitted by plaintiff to see the son of the parties every two or three weeks until April, 1941, when the son was injured in an accident and taken to a hospital. No visits to defendant's house were admitted by plaintiff thereafter. Since April, 1941, the son has been living with plaintiff.

Without objection plaintiff testified that he had no sexual relations with defendant since their separation and that he never spoke to her on his visits except on a single occasion when the boy had been injured in April, 1941. The competency of this testimony of nonaccess by the husband, thus received without objection, becomes an important consideration in determining the issue of the legitimacy of the child born in February, 1942.

The statute (Civ. Prac. Act, § 349) in plain language declares a husband or wife incompetent " to testify against the other " upon the trial of an action " founded upon an allegation of adultery." To the extent that the husband's testimony of nonaccess in support of his action for a divorce tended to show adultery by excluding him from paternity of the child, he was clearly incompetent to testify. But the statute is not limited in terms, nor can it be limited in effect, to actions for a divorce or to those parts of actions between husband and wife which have divorce as an object. The incompetency of one spouse to testify against the other extends to every cause of action, where the parties to the marriage are adverse parties to the action and where the relief sought is to be founded upon adultery. Since illegitimacy is necessarily founded upon adultery, the statute rendered the husband incompetent to testify upon this branch of the case as well as upon the issues relating directly to the divorce, if, indeed, those issues are separable at all. Legitimacy is " one of the issues in the action — the action for divorce between husband and wife " and is " incidental to the main determination." (*Stillman* v. *Stillman,* 240 N. Y. 268, 272.)

This rule has never been relaxed. " It is well settled that neither husband nor wife are competent to prove non-access during wedlock, whatever may be the form of legal proceedings, or whoever may be the parties thereto." (*Chamberlain* v. *The People,* 23 N. Y. 85, 88.) This was quoted as authorita-

tive law, in the absence of statute to the contrary, in 1940 by Chief Judge LEHMAN in *Comr. of Public Welfare* v. *Koehler* (284 N. Y. 260, 265). It was distinctly held in *Biers* v. *Biers* (156 App. Div. 409, 413) that the prohibition of the statute was not limited to the issue of adultery in an action for divorce, but extended to any other issue tendered in such an action where testimony was not expressly permitted by statute. This, the court said, is shown by " the plain reading of the statute and the language has been strictly applied by the courts in all cases, so far as we have been able to find." (See, also, by way of analogy, *Dickinson* v. *Dickinson,* 63 Hun, 516.) A husband is incompetent to testify to nonaccess to his wife from which the inference of adultery is sought to be established (*Taylor* v. *Taylor,* 123 App. Div. 220, 222) and if he is incompetent for that purpose he is equally incompetent, as it has been pointed out, to testify to such fact for any other purpose in an action founded upon adultery. In *Bolognino* v. *Bolognino* (136 Misc. 656) the testimony of a husband that he had never occupied an apartment in which he had sought to prove his wife committed adultery was excluded as coming within the rule.

If the testimony falls within the scope of section 349 of the Civil Practice Act, the incompetency of the witness cannot be waived, nor does his testimony become admissible by a failure to object to it. As Mr. Justice UNTERMYER pointed out in *Bolognino* v. *Bolognino* (*supra,* p. 658), the parties could not " either by consent or acquiescence " set the prohibitions of the statute aside. " They could no more do this by omitting to object to testimony declared to be incompetent than they could by default waive objection to a divorce on insufficient grounds." The problem was carefully considered by the General Term of the Court of Common Pleas in *Fanning* v. *Fanning* (2 Misc. 90, 94). It was said that the evidence was received without objection " but it was incompetent evidence, and as guardian of the interests of the public and persons not parties to the record, it is our imperative duty to prevent the dissolution of the marriage relation by means which the law condemns and expressly forbids. An infant child is the issue of this marriage and we cannot tolerate that its character shall be sullied * * * on such evidence." This decision was approved by the Appellate Division in *Taylor* v. *Taylor* (*supra,* p. 222) with the statement that " No objection to the competency of the proof for that purpose was necessary."

The infant whose legitimacy is in issue between these parties is not a party here and is not a proper party (*Stillman* v. *Still-*

*man, supra*) but it is directly and intimately to be affected by the judgment to be given here and the duty would rest upon the court, even if the language of the statute were less explicit, to reject incompetent testimony so vitally important to the rights of an infant not a party. Accordingly the plaintiff's testimony of nonaccess during the period of gestation is stricken from the record.

The provisions of section 126 of the Domestic Relations Law have no application to this action. They relate only to the special paternity proceedings authorized by article 8 of that statute — proceedings to enforce the obligation of a father to support and educate a child born out of wedlock. In such a proceeding, if the mother is married, either she or her husband may testify to nonaccess. But this rule applies only to these proceedings and not to actions for divorce. (*Comr. of Public Welfare* v. *Koehler, supra*, p. 265.) "Except in paternity proceedings the common law rule that husband and wife may not so testify remains in force." These proceedings, as the court was careful to point out, are authorized to enforce a statutory duty to support, and the order does not bind the husband of the mother, or the mother or the child upon the question of legitimacy and it does not establish the status of the child (pp. 266, 267).

With the husband's testimony of nonaccess excluded, the record is insufficient to sustain the allegation of illegitimacy in the face of the strong presumption that the child, conceived during wedlock, is legitimate. The presumption of legitimacy, which has a deeply laid foundation in public policy, has passed through evolutionary changes; it has been shorn of some absurdities, but on the whole it remains today substantially as it was in New York a century or more ago. It is a rule of necessity in any society in which legal recognition is given to the family as a unit and to reciprocal rights and obligations of members of a family. What remains in this record without the husband's testimony is that the parties were living apart, but in nearby communities during the period of gestation; that the birth certificate for the child gave no name for the father and gave the mother's maiden name to the child; that the mother, upon the service of the summons, was told by the process server that the husband claimed he had nothing to do with the child of 1942 and that the mother asked: "Who said he did?"; that some witnesses for plaintiff testified they never saw plaintiff at the house where defendant was living while they were there. The statements contained in the birth cer-

tificate have not been attributed to defendant and are not binding upon her; the process server's testimony attributed a statement to defendant which is equivocal in effect, and the other testimony has almost no probative value upon this issue.

If the husband's testimony of nonaccess were not excluded, it would be doubtful if the presumption would be overcome in view of the accessibility of the parties; the conceded visits of plaintiff to defendant's house to see his son until April, at least, of 1941, and the defendant's testimony of access. " A child born of a wife during marriage is presumptively legitimate.'' (*Stillman* v. *Stillman, supra,* p. 272.)

The ancient rule of the common law that the husband must be presumed to be the father " if he was within the four seas during any part of the usual period of gestation,'' as Chancellor WALWORTH remarked in 1832 in *Cross* v. *Cross* (3 Paige, 139, 140), " has long since been exploded '' on account of " its absolute nonsense.'' But he remarked that the " good sense '' of the " modern rule '' required that it be shown beyond a reasonable doubt " that there was no such access as could have enabled the husband to be the father of the child.'' The Chancellor felt a fair statement of the rule to be that although actual adultery with other persons is established, " yet if access by the husband has taken place, so that by the laws of nature he may be the father of the child, it must be presumed to be his, and not the child of the adulterer.'' And in a later case, in 1846, the Chancellor felt that the fact the wife was living openly in cohabitation with another man in Schenectady, the same community in which the husband lived, no steps in the meantime having been taken by the husband to break up such intercourse, did not constitute sufficient evidence of nonaccess to illegitimatize children born of his wife. Impossibility of access need not be shown, he held, but he reiterated the rule of *Cross* v. *Cross* that nonaccess must be shown beyond a reasonable doubt. (*Van Aernum* v. *Van Aernum,* 1 Barb. Ch. 375, 377, 378.)

The presumption is to be overcome by evidence that is " strong, distinct, satisfactory and conclusive '' and by " disproving every reasonable possibility.'' It is not " shaken by a mere balance of probability.'' (*Hynes* v. *McDermott,* 91 N. Y. 451, 458, ANDREWS, J.). In *Caujolle* v. *Ferrié* (23 N. Y. 90, 108) it was said of a child that " The presumption and the charity of the law are in his favor; and those who wish to bastardize him must make out the fact by clear and irrefragable proof.'' Judge GAYNOR, writing for the Appellate Division in

*Mayer* v. *Davis* (122 App. Div. 393), imported to this language its dictionary definition that " irrefragable proof " means proof so clear and certain " as not to admit of denial, dispute or controversy " and required that nonaccess be shown incontrovertibly — a test which must be conceded to be almost as insurmountable as that of the ancient common law.

The rule today is substantially as Chancellor WALWORTH defined it in the New York Court of Chancery a century ago. " The presumption will not fail unless common sense and reason are outraged by holding that it abides." (*Matter of Findlay*, 253 N. Y. 1, 8.) There it was held that the presumption continues though the parties are living apart " if there is a fair basis for the belief that at times they may have come together." See further *Comr. of Public Welfare* v. *Koehler* (*supra*) and *Matter of Lentz* (247 App. Div. 31). There is nothing " extravagantly improbable " or " indubitably false " (*Matter of Findlay, supra*) in the defendant's contention of access in this case and I conclude that the presumption operates in favor of the legitimacy of the child born February 20, 1942.

Judgment of divorce granted; the counterclaim seeking a judicial separation dismissed; the judgment to provide that the child born February 20, 1942, is the legitimate child of the parties.

Submit decision and judgment.