Joseph SHERMAN, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 521, Docket 29487.

United States Court of Appeals
Second Circuit.

Argued June 9, 1965.

Decided Sept. 22, 1965.

Rehearing En Banc Submitted
Dec. 23, 1965.

Decided Jan. 17, 1966.

Ira Gollobin, New York City, for peti-
tioner.

Francis J. Lyons, Sp. Asst. U. S. Atty.,
Robert M. Morgenthau, U. S. Atty.,
James G. Greilsheimer, Sp. Asst. U. S.
Atty., for respondent.

DECISION OF PANEL

Before WATERMAN, FRIENDLY
and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

This case arises upon a petition to
review a final order of deportation by
the Immigration and Naturalization
Service holding the petitioner deportable
under Section 241(a) (2) of the Immi-
gration and Nationality Act of 1952. 8
U.S.C. § 1251(a) (2). We have jurisdic-
tion to review this final order under Sec-
tion 106(a) of the Act. Immigration
and Nationality Act of 1952, § 106(a) as
amended, 75 Stat. 651 (1961), 8 U.S.C.
§§ 1105a(a). Foti v. I. N. S., 375 U.S.
217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

The petitioner, an alien, was born in
1906 in Warsaw, Poland. In 1920 he
came to the United States and was ad-
mitted for permanent residence along
with his mother and three sisters. The

petitioner contends that the Government has not shown that he has not remained continuously in the United States ever since. The Government, however, seeks to prove that the petitioner traveled to France in June of 1937 using a United States passport issued in the name of Samuel Levine and returned to the United States on or about December 20, 1938 using this same passport, in this manner avoiding the inspection given to all aliens upon arrival in the United States. The Immigration and Nationality Act of 1952 provides that an alien in the United States who entered "without inspection" shall be deported upon the order of the Attorney General. 8 U.S.C. § 1251(a)(2). As there is no time limit on the operation of this section it is possible for the Attorney General to deport aliens who have been residents for a long period but who last entered the country without inspection. For example, this section permitted the Government to proceed against the petitioner in 1963 alleging an entry without inspection almost twenty-five years earlier.[1] One might wish that

the law had taken a different turning, but for better or worse Congress has determined that in order to implement the policy of alien inspection it is necessary to make an alien not properly inspected subject to deportation at any time. Therefore, if the Government's factual contentions are sustained the petitioner can be deported.

The Government "undertook to show affirmatively" that the petitioner had entered the United States in 1938 without inspection.[2] Once the Government chose to proceed in this manner, established rules of evidence instruct us that it assumed the burden of persuasion on this issue; that is, the Government assumed the burden of proving the existence of the facts which impose the legal consequences the Government sought to invoke. See McCormick, Evidence § 307 (1954). The Government did offer evidence tending to show entry without inspection in 1938, which evidence is precised in the margin.[3] The petitioner elected not to introduce any evidence and

1. Prior to 1952 the Government had only five years after an alleged illegal entry in which to commence proceedings. In the petitioner's case this period expired in 1943. Thus until the 1952 Act, eliminating all statutes of limitation in deportation proceedings, was passed, petitioner could not have been proceeded against. See Gordon & Rosenfield, Immigration Law and Procedure § 4.6b (1959).

2. The Government might have proceeded on a different theory. The petitioner refused to identify the record of entry of Chomia Szorman on August 8, 1920 as a record of his entry into the United States. As a consequence the time, place and manner of petitioner's entry into the United States were never officially documented. The Board of Immigration Appeals accepted it as proven that petitioner had entered the United States in 1920. Nevertheless, the Government suggests in its brief that since the record of entry of Chomia Szorman was never received in evidence the Government was in a position to take advantage of the presumption contained in § 291 of the Act. 8 U.S.C. § 1361. Section 291 provides

*inter alia* that in any deportation proceeding the burden of proof is on the alien to show the "time, place, and manner of his entry into the United States." If this burden is not sustained, Section 291 goes on to state that the alien shall be presumed to be in the United States "in violation of law." If this presumption obtained in the present case it would be unnecessary for the Government to prove entry without inspection in 1938. But the Government did not proceed in the manner just outlined. No doubt it recognized that the petitioner's lawful entry into the United States in 1920 had for all practical purposes been established. See Sherman v. Hamilton, 295 F.2d 516, 518 (1 Cir. 1961).

3. The Government introduced evidence establishing that in June of 1937 petitioner had applied for and received a United States passport under the identity of Samuel Levine. It was also established that someone using the name Samuel Levine traveled to Europe on this passport aboard the SS Aquitania in June of 1937 and that someone using the name Samuel Levine returned to the United States

rested content after cross-examining the Government's chief witness in an attempt to weaken the probative force of his testimony.[4] At the statutorily required hearing the special inquiry officer found on this evidence that petitioner was deportable for having entered the United States without inspection. Petitioner sought administrative review by the Board of Immigration Appeals of this determination. The Board made its own independent determination of all the disputed factual issues, as is its practice,[5] and reached a conclusion identical to that reached by the special inquiry officer. From all that appears in the record neither the special inquiry officer nor the Board paid any heed to the degree of belief that they were required to reach before they could find for the Government, other than to assume tacitly that the Government was simply required to establish the facts on which it relied by a "preponderance of the evidence." It is the petitioner's contention that the Board's decision must be reversed because a higher degree of persuasion is required.

The essence of petitioner's claim is that even though deportation is not a criminal penalty it is a penalty to which serious consequences frequently attach and consequently the requirements of due process in deportation proceedings should be elaborated by analogy to the criminal law rather than to the law of economic regulation. In particular, petitioner contends that in his case the degree of belief which must exist before the Board of Immigration Appeals can conclude that the facts on which deportation depends are true should be defined as it is in criminal cases.[6] Petitioner does not argue that due process requires the fact finder to have a degree of belief "beyond a reasonable doubt" in all deportation proceedings. He does contend that in such proceedings there is a distinction between the due process due an alien who has resided in this country for a long period of time and that due an alien who only recently came to this country. In the former situation petitioner claims that deportation is tantamount to banishment and that considerations of fairness imbedded in the concept of due process requires that the Government prove its case beyond a reasonable doubt if it is to succeed.

Even a sympathetic reading of the Government's brief indicates that it largely misunderstands petitioner's argument. The Government invites us to

---

on this passport aboard the SS Ausonia and arrived in this country on or about December 20, 1938. This evidence, of course, did not conclusively establish that Sherman was the individual so using the passport. The only direct evidence tending to prove that petitioner left the United States in 1937 and returned in 1938 is the testimony of Edward Morrow who testified that he recognized petitioner as one of the persons who had served with him in the Spanish Civil War and that he recognized petitioner as one of the passengers on board the SS Ausonia on its return to the United States on December 20, 1938.

4. During the extensive cross-examination of Morrow it was stressed that Morrow was testifying to his ability to identify someone he claimed to have met but briefly some twenty-seven years ago; that Morrow admitted to having no "personal contact" in Spain with the individual

he claimed was the petitioner; that Morrow when first shown the 1937 passport photograph of "Samuel Levine" did not identify it as the individual he had met in Spain; and that he could not positively identify petitioner as the individual he had met in Spain.

5. See Gordon & Rosenfield, Immigration Law and Procedure § 1.10e (1959).

6. Although the petitioner's brief never says so in so many words, it is clear that in directing our attention to the degree of belief required in criminal cases petitioner refers to the common assertion that in a criminal proceeding the burden is on the prosecution to prove beyond a reasonable doubt all elements of the crime of which the defendant is accused. See 9 Wigmore, Evidence § 2497 (3d ed. 1940). See generally McBaine, Burden of Proof: Degree of Belief, 32 Calif.L.Rev. 242 (1944).

examine the record of the administrative proceedings below and argues that the present deportation order must be sustained as it is based on "reasonable, substantial, and probative evidence." In support of this position the Government draws our attention to Section 242(b) (4), 8 U.S.C. § 1252(b) (4), and Section 106(a) (4), as amended, 75 Stat. 651 (1961), 8 U.S.C. § 1105a(a) (4), of the Immigration and Nationality Act of 1952. Section 242(b) (4) provides *inter alia* that "no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." And Section 106(a) (4) states that a deportation order, "if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive."[7] Section 106(a) (4) is clearly a general description of the standard of judicial review that governs this and other federal appellate Courts in reviewing final orders of deportation under Section 106(a); that is, the question for the appellate court in reviewing an agency resolution of a disputed factual question is whether there was substantial evidence on the whole record to support the agency's finding. And, even though Section 242(b) appears in a section of the Act prescribing agency procedures, it is best understood as a restatement of the proper standard of judicial review and a reminder to the Board that final orders of deportation must be based on substantial evidence.[8] The Government apparently believes that these sections require a decision in its favor. In our opinion, neither section is relevant to a determination of the issue presently before this court.

The question raised by petitioner's claim concerns the degree of belief that must exist before the Board may conclude that an assertion of fact on which the Government has the burden of proof is true. Such a question is a question of law for a court to decide regardless of how reasonable the Board's resolution of the disputed factual issues in this case may have been. It might be argued, of course, that the Board resolved this question of law against the petitioner and this resolution should not be disturbed by this court on appeal. From the record, however, it is not clear that the Board did advert to the problem.[9] And even if we assume that the Board did rule against the petitioner on this question of law we are not thereby foreclosed from reconsidering the question. There is no indication in the Act that Congress intended the Board to decide what degree of persuasion was appropriate in the case of a long-time resident alien threatened with deportation.[10] Indeed, there is no indication in the Act that Congress adverted in any way to the problem of the degree of persuasion imposed upon the Government in deportation proceedings. The question raised by this petition concerns the degree of persuasion constitutionally required or otherwise appropriate in deportation proceedings involving long-time resident aliens, and this is a question especially meet for judicial determination.

It is open to us to hold against the petitioner since the Supreme Court has

---

7. See generally Jaffe, Judicial Review: "Substantial Evidence on the Whole Record." 64 Harv.L.Rev. 1233 (1951).

8. Gordon & Rosenfield, Immigration Law and Procedure § 8.12c (1959).

9. No discussion of this problem, as such, is contained in the Board's opinion. For the most part the Board simply credited the testimony of the government witnesses. It then concluded that this testimony was sufficient to establish the facts on which deportation depends.

10. If the Act evinced a Congressional desire to leave to the administrative agency the choice between the various degrees of persuasion potentially applicable in deportation proceedings we would be inclined to hold that the question was not meet for judicial determination even though it was a question of law.

11. See, e. g., Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221 (1923); Buga-

repeatedly stated that deportation proceedings are civil in nature,[11] and ordinarily in civil actions the party having the burden of proof need only prove the existence of facts on which he relies by a preponderance of the evidence. 9 Wigmore, Evidence § 2498 (3d ed. 1940). We do not believe, however, that we are required to conclude the present case in such a syllogistic fashion. As the Court insists that deportation proceedings are civil we are precluded from reclassifying them as criminal, and, having thus reversed the major premise, then holding the degree of belief required in such proceedings is that which is required in criminal prosecutions. We are not, however, precluded from considering whether the Government should bear a higher burden of persuasion when it attempts to deport a long-time resident alien regardless of whether the proceeding is civil or criminal in nature. Because the realm of evidence law is one in which courts are especially expert,[12] and because rules regulating the degree of persuasion are traditionally judge-made,[13] we believe that we may consider whether wisdom and justice require that the Government bear a higher burden of persuasion in the present case.

It seems clear that due process requires that there be *some* test by which the fact finder can ascertain whether a fact does or does not exist in every legal proceeding.[14] Perhaps due process also requires that in certain criminal proceedings threatening serious penalties the prosecution demonstrate that the facts on which guilt depends are almost certainly true; that is, that the jury must believe beyond a reasonable doubt that these facts exist before it can find for the prosecution. Having come this far it would not be a long step to conclude that this same higher degree of persuasion is constitutionally required in deportation proceedings involving aliens who have resided in the United States for a long period of time because in such a case forcible expulsion would be tantamount to banishment—a penalty that surpasses in its enormity many imposed by the criminal law. We have nevertheless concluded that petitioner's constitutional claim should be rejected. Neither of the cases cited by petitioner convince us that the Court has announced the constitutional rule petitioner urges us to apply in the present case. Petitioner argues that in Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140 (1957) and Gastelum-Quinones v. Kennedy, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 (1963) the Court announced that due process requires the administrative agency to believe beyond a reasonable doubt that the facts on which deportation depended are true. Both Rowoldt and Gastelum-Quinones involved the threatened deportation of individuals alleged to be members of the Communist party within Section 241(a) (6) (C) of the Act. 8 U.S.C. § 1251(a) (6) (C). In both cases the Court reversed, holding the evidence of record did not demonstrate "meaningful" association. Although the issue is not free from doubt, we believe that in these cases the Court held that only individuals who "meaningfully" belonged to the Communist party could be deported under Section 241(a) (6) (C) and reversed because no evidence had been introduced establishing meaningful

jewitz v. Adams, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893).

12. See 77 Harv.L.Rev. 556–59 (1964).

13. See generally McBaine, supra note 6. Profession McBaine assumes throughout his excellent article that the elaboration of rules regulating the degree of belief required in a given proceeding is the province of the judge. Of course, judges will often be constrained by precedent. But we are acquainted with no precedent that bears directly on the issue as we have formulated it on this appeal.

14. See McBaine, supra note 6, at 244.

association—an essential element in the Government's case. The Court did not say in those cases that due process required that the Government prove the facts on which deportation there depended—meaningful membership—beyond a reasonable doubt. Whether due process does so require is still an open question, which we feel we should avoid because we can hold for the petitioner on a nonconstitutional ground.

As we have previously noted, the rules regulating the degree of persuasion in legal proceedings are traditionally judge-made. Thus, as to certain issues, courts have been free to conclude that it is fair and just to require a litigant in a civil action to carry a somewhat heavier burden of persuasion than litigants are required to bear as to the issues in most civil actions. 9 Wigmore, Evidence § 2498 at 329 (3d ed. 1940). In some civil actions courts have even required that one party carry the burden usually borne by the prosecution in criminal proceedings. See, e. g., Admire v. Admire, 180 Misc. 68, 42 N.Y.S.2d 755 (Sup.Ct.1943) (necessary to prove nonaccess beyond reasonable doubt in overcoming presumption of legitimacy). We have concluded that the present case exemplifies a type of proceeding in which courts should require the Government to carry such a heavy burden. The petitioner entered the United States in 1920. The Government now seeks to deport him alleging that the petitioner left the country in 1937 and reentered without inspection in 1938. If the Government prevails, petitioner will be forcibly expelled from this country and returned to Poland, which is in no meaningful sense his country now. We do not say that the Government should not be able to proceed against petitioner after so long a time. We do hold that the Government is required to establish that it is almost certainly true that petitioner entered the United States without inspection in 1938; in other words, the Government must prove beyond a reasonable doubt the facts upon which deportation depends.

We wish to stress that we do not hold this higher burden is imposed on the Government in all deportation cases. It is for the Board of Immigration Appeals to decide in the first instance when the rule we announce today relating to proceedings involving long-time resident aliens applies, and we wish to stress that the rule will not expand the scope of judicial review of agency determinations. The purpose of the rule is to impress upon the agency the grave nature of the task it performs. Although repeated attempts to redefine the term "beyond a reasonable doubt" may simply "aid the purposes of the tactician," [15] we are confident that the imposition of this requirement will have the salutary effect of causing the Board to proceed carefully in extreme cases such as the case now before this court. All we can require is that the special inquiry officer and the Board conscientiously ask whether the facts on which the deportation of a long-term resident alien depends are almost certainly true. If these administrators do so proceed the scope of review will remain limited to an inquiry whether the final order of deportation is supported by reasonable, substantial, and probative evidence on the record considered as a whole.

Petitioner contends that we should go on to weigh the evidence against this higher standard and urges that in this light the evidence is insufficient to support a final order of deportation. We cannot agree. The requirement we have announced today is directed at the finder of facts, not the appellate court. Our only course is to dissolve the final order of deportation and remand for further proceedings not inconsistent with this opinion.

Deportation order set aside and case remanded to Immigration and Naturalization Service.

---

15.  9 Wigmore, Evidence, § 2497, at 320 (3d ed. 1940).

FRIENDLY, Circuit Judge (dissenting):

Appealing as is my brothers' desire to ease the rigors of a statute that permits deportation twenty-five years after the cause,[1] I am unable to find the requisite authority on our part. Moreover, I fear that imposing a special judicially prescribed burden of persuasion on an ill-defined group of cases will introduce confusion and uncertainty into deportation law.

If the slate were clean, I might well agree that the standard of persuasion for deportation should be similar to that in denaturalization, where the Supreme Court has insisted that the evidence must be "clear, unequivocal, and convincing" and that the Government needs "more than a bare preponderance of the evidence" to prevail. Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796 (1943); Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). But here Congress has spoken, most pertinently in § 242(b) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1252(b), where it directed the Attorney General to make regulations requiring that

"no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."

■■ This provision overruled earlier indications that had been taken to recognize a lower quantum of proof as sufficient. See United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927) ("some evidence" sufficient to sustain deportation order against attack in habeas corpus); Note, Developments in the Law—Immigration and Nationality, 66 Harv.L.Rev. 643, 698 (1953); Gor-

don & Rosenfield, Immigration Law and Procedure § 8.12c (1959). Standing alone, this direction to the Immigration Service to apply a higher standard than had previously been thought permissible might not preclude the courts from insisting on a still higher one in certain types of cases. But Congress made rather plain that, in raising the standard, it did not intend the courts to have liberty to effect further elevations. The House Report on the Immigration and Nationality Act, 2 U.S.Code Cong. & Ad.News (1952), pp. 1653, 1712, stated:

"The requirement that the decision of the special inquiry officer shall be based on reasonable, substantial, and probative evidence means that, where the decision rests upon evidence of such a nature that it cannot be said that a reasonable person might not have reached the conclusion which was reached, the case may not be reversed because the judgment of the appellate body differs from that below."

The intention thus expressed was enacted in 1961, 8 U.S.C. § 1105a(a) (4):

"Judicial Review of Orders of Deportation and Exclusion.

"[T]he Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive."

The standard of "reasonable, substantial, and probative evidence" thus applies in all deportation cases—both to the Service and to the courts.

■ It is true that the substantial evidence rule itself is "quite malleable and permits wide variances in judicial practice." Gordon & Rosenfield, supra, at 857; see also 4 Davis, Administrative Law Treatise § 29.02 at 126 (1958), and 1965 pocket part. But cf. NLRB v. Wal-

---

1. It should not be forgotten that Congress has provided a method of relief for such cases, 8 U.S.C. § 1254, which

petitioner, for reasons best known to himself, has declined to pursue.

ton Mfg. Co., 369 U.S. 404, 407, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). And the Supreme Court has spoken. of the "solidity of proof that is required for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for forty years." Rowoldt v. Perfetto, 355 U.S. 115, 120, 78 S.Ct. 180, 183, 2 L.Ed.2d 140 (1957). Granting all this, I perceive no proper basis under the statutory standard for reversing the order here under review; indeed, by remanding the case rather than setting the order aside, my brothers necessarily concede the evidence to have been sufficient even under the reasonable doubt standard they would apply.

If, as has been urged, deportation of a long-time resident should be treated as a penal sanction, my brothers' conclusion might indeed follow on constitutional grounds. But, as they recognize, an inferior court cannot take that step so long as Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 57 L.Ed. 978 (1913), Harisiades v. Shaughnessy, 342 U.S. 580, 594–95, 72 S.Ct. 512, 96 L.Ed. 586 (1952), Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954), and other Supreme Court decisions remain the law.

I would deny the petition.

## DECISION EN BANC

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and ANDERSON, Circuit Judges.

### PER CURIAM:

The Immigration and Naturalization Service having moved for rehearing in banc, and a majority of the judges in regular active service having voted to reconsider the case in banc and having given the parties an opportunity to submit further briefs, upon consideration by the court in banc the petition of Jo-seph Sherman to review the order of the Service is denied, for reasons stated in Judge Friendly's dissenting opinion, 350 F.2d at 900.

WATERMAN and SMITH, Circuit Judges, dissent and vote to grant the petition and set aside the deportation order for reasons stated in Judge Waterman's opinion, 350 F.2d 894.