WOODBY *v.* IMMIGRATION AND
NATURALIZATION SERVICE.

No. 40.   Argued November 17, 1966.—Decided December 12, 1966.*

---

*Together with No. 80, *Sherman* v. *Immigration and Naturalization Service,* on certiorari to the United States Court of Appeals for the Second Circuit, argued on November 16–17, 1966.

*Jacob A. Myers* argued the cause for petitioner in No. 40. With him on the briefs was *Sidney G. Kusworm, Sr.*

*Francis X. Beytagh, Jr.,* argued the cause for respondent in No. 40, *pro hac vice,* by special leave of Court. On the brief were *Solicitor General Marshall, Assistant Attorney General Vinson, Robert S. Rifkind, L. Paul Winings* and *Charles Gordon.*

*Joseph Forer* argued the cause and filed briefs for petitioner in No. 80.

*Charles Gordon* argued the cause for respondent in No. 80. On the brief were *Solicitor General Marshall, Assistant Attorney General Vinson, Richard A. Posner* and *Maurice A. Roberts.*

*Frank C. Newman, pro se,* filed a brief for Newman et al., as *amici curiae,* in No. 80.

MR. JUSTICE STEWART delivered the opinion of the Court.

The question presented by these cases is what burden of proof the Government must sustain in deportation proceedings. We have concluded that it is incumbent upon the Government in such proceedings to establish the facts supporting deportability by clear, unequivocal, and convincing evidence.

In *Sherman* (No. 80), the petitioner is a resident alien who entered this country from Poland in 1920 as a 14-year-old boy. In 1963 the Immigration and Naturalization Service instituted proceedings to deport him upon the ground that he had re-entered the United States in 1938, following a trip abroad, without inspection as an

alien.[1]   After a hearing before a special inquiry officer, the petitioner was ordered to be deported, and the Board of Immigration Appeals dismissed his appeal.[2]

The Government's evidence showed that the petitioner had obtained a passport in 1937 under the name of Samuel Levine, representing himself as a United States citizen.   Someone using this passport sailed to France in June 1937, proceeded to Spain, returned to the United States in December 1938, aboard the S. S. *Ausonia,* and was admitted without being examined as an alien.   To establish that it was the petitioner who had traveled under this passport, the Government introduced the testimony of Edward Morrow, an American citizen who had fought in the Spanish Civil War.   Morrow was at first unable to remember the name Samuel Levine or identify the petitioner, but eventually stated that he thought he had known the petitioner as "Sam Levine," had seen him while fighting for the Loyalists in Spain during 1937 and 1938, and had returned with him to the United States aboard the S. S. *Ausonia* in December 1938.   Morrow conceded that his recollection of events

---

[1] Section 241 (a) (2) of the Immigration and Nationality Act of 1952, 66 Stat. 204, 8 U. S. C. § 1251 (a) (2), provides for deportation of any alien who "entered the United States without inspection or at any time or place other than as designated by the Attorney General . . . ."   Prior to 1952, the Government was required to bring deportation proceedings within five years of an alleged illegal entry, 39 Stat. 889 (1917), as amended, 8 U. S. C. § 155 (a) (1946 ed.).   Thus, under the prior law, the petitioner would not have been subject to deportation proceedings commenced after 1943. However, this time limit was retroactively eliminated by the 1952 Act, § 241 (d), 66 Stat. 208, 8 U. S. C. § 1251 (d).   See Developments in the Law, Immigration and Nationality, 66 Harv. L. Rev. 643, 683–684.

[2] In conformity with its usual practice, the Board made its own independent determination of the factual issues after *de novo* examination of the record.   See Gordon & Rosenfield, Immigration Law and Procedure 46–47 (1959).

occurring 27 years earlier was imperfect, and admitted that his identification of the petitioner might be mistaken.

It is not clear what standard of proof the special inquiry officer and the Board of Immigration Appeals on *de novo* review applied in determining that it was the petitioner who had traveled to Spain and re-entered the United States under the Samuel Levine passport. At the outset of his opinion, the special inquiry officer stated that the Government must establish deportability "by reasonable, substantial and probative evidence," without discussing what the burden of proof was. Later he concluded that the Government had established its contentions "with a solidarity far greater than required," but did not further elucidate what was "required." The Board of Immigration Appeals stated that it was "established beyond any reasonable doubt" that the petitioner had obtained the Samuel Levine passport, and added that this established a "presumption" that the petitioner had used it to travel abroad. The Board further stated that it was a "most unlikely hypothesis" that someone other than the petitioner had obtained and used the passport, and asserted that "the Service has borne its burden of establishing" that the petitioner was deportable, without indicating what it considered the weight of that burden to be.

Upon petition for review, the Court of Appeals for the Second Circuit originally set aside the deportation order, upon the ground that the Government has the burden of proving the facts supporting deportability beyond a reasonable doubt.[3] The court reversed itself, however, upon a rehearing *en banc,* holding that the Government need only prove its case with "reasonable, substantial,

---

[3] 350 F. 2d 894.

and probative evidence."[4]   We granted certiorari, 384 U. S. 904.

In *Woodby* (No. 40), the petitioner is a resident alien who was born in Hungary and entered the United States from Germany in 1956 as the wife of an American soldier. Deportation proceedings were instituted against her on the ground that she had engaged in prostitution after entry.[5]   A special inquiry officer and the Board of Immigration Appeals found that she was deportable upon the ground charged.

At the administrative hearing the petitioner admitted that she had engaged in prostitution for a brief period in 1957, some months after her husband had deserted her, but claimed that her conduct was the product of circumstances amounting to duress. Without reaching the validity of the duress defense, the special inquiry officer and the Board of Immigration Appeals concluded that the petitioner had continued to engage in prostitution after the alleged duress had terminated. The hearing officer and the Board did not discuss what burden of proof the Government was required to bear in establishing deportability, nor did either of them indicate the degree of certainty with which their factual conclusions were reached. The special inquiry officer merely asserted that the evidence demonstrated that the petitioner was

---

[4] 350 F. 2d, at 901.   The court adopted the reasoning of the opinion which Judge Friendly had filed as a dissent to the original decision.   Judges Waterman and Smith, who had formed the original majority, dissented.

[5] Section 241 (a) (12) of the Immigration and Nationality Act of 1952, 66 Stat. 207, 8 U. S. C. § 1251 (a) (12), provides for the deportation of any alien who "by reason of any conduct, behavior or activity at any time after entry became a member of any of the classes specified in paragraph (12) of section 212 (a) . . . ." Among the classes specified in § 212 (a) (12) of the Act, 66 Stat. 182, 8 U. S. C. § 1182 (a) (12), are "Aliens who are prostitutes or who have engaged in prostitution. . . ."

deportable. The Board stated that the evidence made it "apparent" that the petitioner had engaged in prostitution after the alleged duress had ended, and announced that "it is concluded that the evidence establishes deportability . . . ."

In denying a petition for review, the Court of Appeals for the Sixth Circuit did not explicitly deal with the issue of what burden of persuasion was imposed upon the Government at the administrative level, finding only that "the Board's underlying order is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole . . . .'" We granted certiorari, 384 U. S. 904.

In the prevailing opinion in the *Sherman* case, the Court of Appeals for the Second Circuit stated that "[i]f the slate were clean," it "might well agree that the standard of persuasion for deportation should be similar to that in denaturalization, where the Supreme Court has insisted that the evidence must be 'clear, unequivocal, and convincing' and that the Government needs 'more than a bare preponderance of the evidence' to prevail. . . . But here," the court thought, "Congress has spoken . . . ." 350 F. 2d, at 900. This view was based upon two provisions of the Immigration and Nationality Act which use the language "reasonable, substantial, and probative evidence" in connection with deportation orders. The provisions in question are § 106 (a)(4) of the Act which states that a deportation order, "if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive," [6] and § 242 (b)(4) of the Act which provides *inter alia* that "no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." [7]

---

[6] 75 Stat. 651 (1961), 8 U. S. C. § 1105a (a)(4).

[7] 66 Stat. 210 (1952), 8 U. S. C. § 1252 (b)(4).

It seems clear, however, that these two statutory provisions are addressed not to the degree of proof required at the administrative level in deportation proceedings, but to quite a different subject—the scope of judicial review. The elementary but crucial difference between burden of proof and scope of review is, of course, a commonplace in the law.[8] The difference is most graphically illustrated in a criminal case. There the prosecution is generally required to prove the elements of the offense beyond a reasonable doubt.[9] But if the correct burden of proof was imposed at the trial, judicial review is generally limited to ascertaining whether the evidence relied upon by the trier of fact was of sufficient quality and substantiality to support the rationality of the judgment. In other words, an appellate court in a criminal case ordinarily does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but whether the judgment is supported by substantial evidence.[10]

That § 106 (a)(4) relates exclusively to judicial review is made abundantly clear by its language, its context, and its legislative history. Section 106 was added to the Act in 1961 in order "to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States."[11] The section is entitled "Judicial Review of

---

[8] See Jaffe, Administrative Law: Burden of Proof and Scope of Review, 79 Harv. L. Rev. 914 (1966); Comment, 41 N. Y. U. L. Rev. 622 (1966); Standard of Proof in Deportation Proceedings, 18 Stan. L. Rev. 1237 (1966).

[9] See McCormick, Evidence 681–685 (1954); 9 Wigmore, Evidence § 2497 (3d ed. 1940).

[10] E. g., Rutkin v. United States, 343 U. S. 130, 135. For discussion of variations of and alternatives to the usual rule, see Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L. J. 1149, 1157–1163 (1960).

[11] H. R. Rep. No. 1086, 87th Cong., 1st Sess., 22.

Orders of Deportation and Exclusion," and by its terms provides "the sole and exclusive procedure for" the "judicial review of all final orders of deportation." Subsection 106 (a)(4) is a specific directive to the courts in which petitions for review are filed.[12]

It is hardly less clear that the other provision upon which the Court of Appeals for the Second Circuit relied, § 242 (b)(4) of the Act, is also addressed to reviewing courts, and, insofar as it represents a yardstick for the administrative factfinder, goes, not to the burden of proof, but rather to the quality and nature of the evidence upon which a deportation order must be based.[13] The provision declares that "reasonable, substantial, and probative evidence" shall be the measure of whether a deportability decision is "valid"—a word that implies scrutiny by a reviewing tribunal of a decision already reached by the trier of the facts. The location of this

---

[12] "Judicial Review of Orders of Deportation and Exclusion

"SEC. 106. (a) The procedure prescribed by, and all the provisions of the Act of December 29, 1950, as amended (64 Stat. 1129; 68 Stat. 961; 5 U. S. C. 1031 et seq.), shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation . . . except that—

.          .          .          .          .

"(4) . . . the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive . . . ." 75 Stat. 651 (1961), 8 U. S. C. § 1105a (a).

[13] This has been recognized by the Board of Immigration Appeals itself:

"Finally, it is important to bear in mind the distinction between the burden of proof and the quality of the evidence which is required to establish that burden successfully. It is to be noted that subsection (b)(4) of section 242 of the act does not speak of the burden of proof but of the quality of the evidence which the Service must produce before deportability can validly be found. . . ." *Matter of V—*, 7 I. & N. Dec. 460, 463.

provision in a section containing provisions dealing with procedures before the special inquiry officer has little significance when it is remembered that the original 1952 Act did not itself contain a framework for judicial review—although such review was, of course, available by habeas corpus or otherwise. See *Marcello* v. *Bonds,* 349 U. S. 302. And whatever ambiguity might be thought to lie in the location of this section is resolved by its legislative history. The Senate Report explained § 242 (b)(4) as follows: "The requirement that the decision of the special inquiry officer shall be based on reasonable, substantial and probative evidence means that, where the decision rests upon evidence of such a nature that it cannot be said that a reasonable person might not have reached the conclusion which was reached, the case may not be reversed because the judgment of the appellate body differs from that of the administrative body." [14]

We conclude, therefore, that Congress has not addressed itself to the question of what degree of proof is required in deportation proceedings. It is the kind of question which has traditionally been left to the judiciary to resolve,[15] and its resolution is necessary in the interest of the evenhanded administration of the Immigration and Nationality Act.

The petitioners urge that the appropriate burden of proof in deportation proceedings should be that which the law imposes in criminal cases—the duty of proving the essential facts beyond a reasonable doubt. The Government, on the other hand, points out that a deporta-

---

[14] S. Rep. No. 1137, 82d Cong., 2d Sess., 30. The House Report contains substantially identical language. H. R. Rep. No. 1365, 82d Cong., 2d Sess., 57.

[15] See McBaine, Burden of Proof: Degrees of Belief, 32 Calif. L. Rev. 242 (1944). See also 9 Wigmore, Evidence §§ 2488–2493, 2497–2498 (3d ed. 1940).

tion proceeding is not a criminal case, and that the appropriate burden of proof should consequently be the one generally imposed in civil cases and administrative proceedings—the duty of prevailing by a mere preponderance of the evidence.

To be sure, a deportation proceeding is not a criminal prosecution. *Harisiades* v. *Shaughnessy,* 342 U. S. 580. But it does not syllogistically follow that a person may be banished from this country upon no higher degree of proof than applies in a negligence case. This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification. In words apposite to the question before us, we have spoken of "the solidity of proof that is required for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for forty years . . . ." *Rowoldt* v. *Perfetto,* 355 U. S. 115, 120.

In denaturalization cases the Court has required the Government to establish its allegations by clear, unequivocal, and convincing evidence.[16] The same burden has been imposed in expatriation cases.[17] That standard of proof is no stranger to the civil law.[18]

---

[16] *Schneiderman* v. *United States,* 320 U. S. 118; *Baumgartner* v. *United States,* 322 U. S. 665; *Nowak* v. *United States,* 356 U. S. 660; *Chaunt* v. *United States,* 364 U. S. 350.

[17] *Gonzales* v. *Landon,* 350 U. S. 920; *Nishikawa* v. *Dulles,* 356 U. S. 129. But see § 349 (c) of the Immigration and Nationality Act, 75 Stat. 656 (1961), 8 U. S. C. § 1481 (c).

[18] This standard, or an even higher one, has traditionally been imposed in cases involving allegations of civil fraud, and in a variety of other kinds of civil cases involving such issues as adultery, illegitimacy of a child born in wedlock, lost wills, oral contracts to make bequests, and the like. See 9 Wigmore, Evidence § 2498 (3d ed. 1940).

No less a burden of proof is appropriate in deportation proceedings. The immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores. And many resident aliens have lived in this country longer and established stronger family, social, and economic ties here than some who have become naturalized citizens.

We hold that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.[19] Accordingly, in each of the cases before us, the judgment of the Court of Appeals is set aside, and the case is remanded with directions to remand to the Immigration and Naturalization Service for such further proceedings as, consistent with this opinion, may be deemed appropriate.[20]

*It is so ordered.*

---

[19] This standard of proof applies to all deportation cases, regardless of the length of time the alien has resided in this country. It is perhaps worth pointing out, however, that, as a practical matter, the more recent the alleged events supporting deportability, the more readily the Government will generally be able to prove its allegations by clear, unequivocal, and convincing evidence.

[20] Section 106 (a)(1) of the Act, 75 Stat. 651 (1961), 8 U. S. C. § 1105a (a)(1), provides that a petition for judicial review must be filed with the Court of Appeals not later than six months after a final order of deportation. In No. 40, *Woodby,* the petitioner's appeal to the Board of Immigration Appeals was dismissed on March 8, 1963, and a motion for reconsideration was denied on May 27, 1963. Petition for review by the Court of Appeals was filed more than six months after the Board upheld the deportation order, but within six months after the denial of the motion to reconsider. The Court of Appeals did not pass on the question whether, in such circumstances, its power of review was limited to consideration whether the denial of the motion for reconsideration was an abuse of discretion, or whether it might also assess in full the validity of the deportation order. Following the decision of the Court of

MR. JUSTICE CLARK, whom MR. JUSTICE HARLAN joins, dissenting.

The Court, by placing a higher standard of proof on the Government, in deportation cases, has usurped the legislative function of the Congress and has in one fell swoop repealed the long-established "reasonable, substantial, and probative" burden of proof placed on the Government by specific Act of the Congress, and substituted its own "clear, unequivocal, and convincing" standard. This is but another case in a long line in which the Court has tightened the noose around the Government's neck in immigration cases.

## I.

I agree that § 106 (a)(4), the 1961 amendment to the Immigration and Nationality Act of 1952, relates to judicial review of administrative orders of the Immigration Service but, with due deference, I cannot see how "It is hardly less clear" that § 242 (b)(4) of the Act, as the Court says, likewise applies exclusively to judicial review. Indeed, on the contrary, the latter section was specifically enacted as the only standard of proof to be applied in deportation cases.

Before § 242 (b) was enacted the immigration laws contained no detailed provision concerning the burden of proof in deportation cases. *Kessler* v. *Strecker*, 307 U. S. 22, 34 (1939). In *Wong Yang Sung* v. *McGrath*, 339 U. S. 33 (1950), this Court extended the provisions

---

Appeals in this case, the Court of Appeals for the Ninth Circuit held, in similar circumstances, that it had authority to undertake full review of the deportation order, as well as the denial of the motion to reconsider. *Bregman* v. *Immigration and Naturalization Service*, 351 F. 2d 401. In light of the *Bregman* decision, the Government before this Court expressly abandoned its contention that in this case the courts are limited to reviewing the denial of the motion to reconsider. See the Government's brief in No. 40, *Woodby*, p. 8, n. 3.

of the Administrative Procedure Act to deportation proceedings. Congress immediately exempted such proceedings from the Administrative Procedure Act and in 1952 established in § 242 (b) an exclusive procedural system for deportation proceedings.

In essence that section, § 242 (b), provides for notice and a hearing before a "special inquiry officer" of the Immigration Service; sets the standard of proof in such cases as "reasonable, substantial, and probative evidence"; and authorizes the Attorney General to issue regulations. In issuing those regulations the Attorney General established a Board of Immigration Appeals. The Board's relationship to the orders of the special inquiry officer is similar to the relationship an agency has to the orders of a hearing examiner under the Administrative Procedure Act. The section also specifically provides that the regulations shall include requirements that "no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence" and that this standard shall be the "sole and exclusive procedure for determining the deportability of an alien under this section." This was the first time in our history that Congress had expressly placed a specific standard of proof on the Government in deportation cases. And the language Congress used made it clear that this standard related to the "burden of proof" as well as "the quality and nature of the evidence." The requirement of "reasonable" evidence cannot be meant merely to exclude "unreasonable" or "irrational" evidence but carries the obvious connotation from history and tradition of sufficiency to sustain a conclusion by a preponderance of the evidence.[1] Congress in overruling *Wong Yang Sung,*

---

[1] Thus the judicial review provision of the Administrative Procedure Act, 5 U. S. C. § 1009 (e)(5), limits the scope of review to a determination of support by "substantial evidence," and 5 U. S. C. § 1006 limits the agencies to acting on "reliable, probative, and

*supra,* carved deportation proceedings from the judicial overtones of the Administrative Procedure Act and established a *built-in* administrative procedure.

This is made crystal clear by the reports of both Houses of Congress on § 242 (b). The Committee Reports, S. Rep. No. 1137, 82d Cong., 2d Sess., 30; H. R. Rep. No. 1365, 82d Cong., 2d Sess., 57, state in simple, understandable language that:

> "The requirement that the decision of the special inquiry officer shall be based on reasonable, substantial, and probative evidence means that, where the decision rests upon evidence of such a nature that it cannot be said that a reasonable person might not have reached the conclusion which was reached, the case may not be reversed because the judgment of the appellate body differs from that below."

The courts consistently applied the standard of "reasonable, substantial and probative" evidence after the adoption of § 242 (b). See, *e. g., Rowoldt* v. *Perfetto,* 355 U. S. 115, 120–121 (1957).

The Court, however, in *Shaughnessy* v. *Pedreiro,* 349 U. S. 48 (1955), once again extended the Administrative Procedure Act's provision respecting judicial review to deportation cases. The reaction of the Congress was identical to that of 1952 when it overruled *Wong Yang Sung, supra.* It enacted, in 1961, § 106 (a)(4) of the Act. Just as § 242 (b) was the first statutory standard of proof, § 106 (a)(4) was the first express statutory standard of judicial review. It provided:

> ". . . the petition [for review] shall be determined solely upon the administrative record upon which the deportation order is based and the Attor-

---

substantial evidence." This pattern has traditionally been held satisfied when the agency decides on the preponderance of the evidence.

ney General's findings of fact, if supported by rea-
sonable, substantial, and probative evidence on the
record considered as a whole, shall be conclusive."

Why Congress passed § 106 (a)(4) if judicial review, as
the Court holds, was already exclusively covered by
§ 242 (b) is beyond my comprehension—unless it was
engaged in shadow boxing. I cannot believe that it was.

The Court says that both the special inquiry officer
and the Board of Immigration Appeals failed to state
what the burden of proof was in these cases. Fault is
found in the officer's use of the phrase "solidarity" of
proof "far greater than required." This language was ap-
parently patterned after this Court's opinion in *Rowoldt*,
*supra*, where the phrase "solidity of proof" was used.
The findings of both the officers and the Board in these
cases show specifically that the burden of proof followed
in each case was that required of the Government in
§ 242 (b) and the Regulations of the Attorney General,
*i. e.*, by "reasonable, substantial, and probative evidence."
This standard has been administratively followed by the
Immigration Service in a long and unbroken line of cases.
See *Matter of Peralta*, 10 I. & N. Dec. 43, 46.

The Court now extends the standard of *Schneiderman*
v. *United States*, 320 U. S. 118 (1943), in denaturaliza-
tion cases, *i. e.*, "clear, unequivocal, and convincing evi-
dence," to deportation cases. But denaturalization and
expatriation are much more oppressive cases than
deportation. They deprive one of citizenship which the
United States had previously conferred. The *Schneider-
man* rule only follows the principle that vested rights
can be canceled only upon clear, unequivocal, and con-
vincing proof; it gives stability and finality to a most
precious right—citizenship. An alien, however, does not
enjoy citizenship but only a conditional privilege ex-
tended to him by the Congress as a matter of grace. Both

petitioners, the record shows, knew this, yet they remained in this country for years—46 in the case of Sherman and 10 in that of Woodby. Still, neither made any effort to obtain citizenship.

## II.

By treating these two cases as raising only a single issue the Court ignores some aspects of *Woodby* which greatly trouble me. Woodby sought review of the final deportation order against her more than six months after entry of that order. Section 106 (a)(1) of the Act specifically limits the jurisdiction of the Court of Appeals to consideration of petitions for review "filed not later than six months from the date of the final deportation order." The legislative history of that provision makes it clear that Congress intended it to be strictly enforced in order to alleviate the spectacle of aliens subject to deportation orders and able to remain in this country for long periods of time by employing dilatory legal tactics. See H. R. Rep. No. 565, 87th Cong., 1st Sess. Since there is no time limit on petitions for rehearing or reconsideration, 8 CFR §§ 242.22, 103.5, permitting review of a final order of deportation merely because a timely petition for review of an administrative refusal to reopen the proceedings has been filed would negate the congressional purpose behind the insistence on timely filing in § 106 (a)(1). *Lopez* v. *U. S. Department of Justice,* 356 F. 2d 986, cert. denied, *post,* p. 839.[2]

---

[2] In *Giova* v. *Rosenberg,* 379 U. S. 18, this Court held only that denial of a petition to reopen or reconsider is reviewable. The Court did not specify the scope of review to be applied. The Court may be depending upon a concession by the Government on this point, but it is clear that jurisdiction cannot be waived. *King Bridge Co.* v. *Otoe County,* 120 U. S. 225; *Good Shot* v. *United States,* 179 U. S. 87.

The Court holds only that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged *as grounds for deportation* are true." (Italics added.) The ground alleged for deportation of Woodby was that she had "engaged in prostitution after entry." It has never been contended that this ground was not properly established. In fact it is conceded that Woodby engaged in prostitution. The only factual dispute involved in her case centers on the question whether her activities arose from duress and ended when the conditions compelling her to stray ceased to exist. It seems clear to me that since Woodby is raising duress as an affirmative defense she bears the burden of establishing all elements of that defense. See *Matter of M—*, 7 I. & N. Dec. 251. And the record clearly shows that both the administrative authorities and the Court of Appeals rejected Woodby's "bizarre" story. Under familiar principles those findings are binding on this Court, *Universal Camera Corp. v. Labor Board,* 340 U. S. 474, and nothing in what the Court holds today affects that conclusion.

I regret that my powers of persuasion with my Brethren are not sufficient to prevent this encroachment upon the function of the Congress which will place an undue and unintended burden upon the Government in deportation cases. I dissent.