MATTER OF ABELLANA AND DONOVAN

In Deportation Proceedings

A-20028370

A-20036650

*Decided by Board January 30, 1973*

Where the Board of Immigration Appeals has entered an order in a case which is then subjected to review by a court which directs a remand for further proceedings, the proper procedure for the Service on remand is to refer the case initially to the Board. This procedure should be followed regardless of whether the reviewing court is a Court of Appeals in proceedings under section 106(a) of the Immigration and Nationality Act or a District Court in habeas corpus or declaratory judgment proceedings.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer than permitted (both aliens)

ON BEHALF OF RESPONDENTS: John L. Weir, Esquire
483 Castro Street
San Francisco, California 94114
(Brief filed)

These cases are before us on certification from the special inquiry officer who denied respondents' motions to reopen their cases. The respondents sought to reopen so that they could apply for adjustment of status to that of aliens lawfully admitted for permanent residence pursuant to section 245 of the Immigration and Nationality Act. The special inquiry officer's decision, dated October 19, 1972, contained a specific finding that respondents' marriages to United States citizens were sham marriages. The special inquiry officer's decision will be affirmed.

The records relate to a former married couple who are both natives and citizens of the Philippines. The male respondent is 43 years of age. The female respondent is 36 years of age. They entered the United States on August 27, 1969 as visitors for pleasure, accompanied by their four children. A fifth child was born to them in this country since then. They were authorized to remain in the United States until May 15, 1970. Since that date they have remained in the United States without authority.

At their deportation hearing, conducted February 9, 1972, both respondents conceded deportability. In the course of the hearing both testified that they had not worked in this country. An order of deportation was entered on February 9, 1972 granting them the privilege of voluntary departure on or before March 10, 1972. They did not appeal from this order but they did not depart. On March 27, 1972 they were divorced in Reno, Nevada. On April 27, 1972 the husband married a 25-year-old citizen of the United States. On April 29, 1972 the wife married a 25-year-old citizen of the United States. Visa petitions on behalf of the respondents were submitted by the respective citizen spouses, and the petitions were approved. In June 1972 the respondents moved to reopen their hearings to be permitted to apply for adjustment of status as spouses of United States citizens. They enclosed application forms for adjustment of status, showing themselves to be residing with their respective new spouses at addresses in San Francisco.

Investigation during June 1972 disclosed evidence that the respondents were then and had been residing together as husband and wife in a house they had purchased jointly in September 1971 at 964 Skyline Drive, Daly City, California (an address they had neglected to furnish on any of their applications for immigration benefits); that both had worked in this country in violation of their visitor status; and that on loan applications subsequent to their divorce they listed themselves as married to each other. A hearing on their motions to reopen was conducted on June 16, 1972, at which testimony was taken of the respondents, their respective new spouses, a neighbor and the investigator of their case.

The special inquiry officer denied the respondents' motions to reopen in a decision dated June 19, 1972. He stated that his decision was based on the fact that the respondents made false statements at the hearing on February 9, 1972 and in various applications filed later. He further stated that in view of his decision not to reopen it was not necessary for him to decide whether or not respondents' new marriages were sham marriages.

Respondents appealed to this Board, more than a month after the time for appeal had expired. We dismissed their appeals as untimely filed, by our order of August 16, 1972, and stated that we had no authority to extend the time for filing an appeal. We stated further that we had not overlooked the arguments of counsel and felt that the case was not of the class of outstandingly meritorious cases, so as to justify disturbing the decision of the special inquiry officer. Thereupon respondents brought petitions for habeas corpus in the United States District Court for the Northern District of California. The court, by its decision dated September 26, 1972, ordered a remand to the special inquiry officer to make a specific

finding as to whether or not the respondents' marriages to United States citizens were sham marriages. On remand, the special inquiry officer, by a decision dated October 19, 1972, specifically found that the marriages of respondents were sham marriages. He then certified the cases to us.

For the guidance of the Service, we shall comment briefly on the procedure employed following entry of the court's order on September 26, 1972. What was then before the court was this Board's order dated August 16, 1972, dismissing as untimely respondents' appeal from the special inquiry officer's order denying their motions to reopen. The court's order in terms directed remand of the record to the special inquiry officer. The Service followed it literally, by-passing this Board.

Where this Board has entered an order in a case which is then subjected to review by a court which directs a remand for further proceedings, we think the proper procedure for the Service on remand is to refer the record initially to this Board. This will enable the Board, after reviewing the court's order, to enter its own order on remand. While this Board must follow the court's mandate, in some cases the Board's order on remand may contain appropriate directives, not inconsistent with the court's order, which may be helpful to the special inquiry officer in his conduct of the further proceedings on remand. We think that this procedure should be employed by the Service, as it usually has been, regardless of whether the reviewing court is a Court of Appeals in proceedings under section 106(a) of the Act or a district court in habeas corpus or declaratory judgment proceedings.

We turn now to a consideration of whether the special inquiry officer's decision of October 19, 1972 was correct. A special inquiry officer has the authority to consider the bona fides of a marriage on which he is requested to base immigration benefits, irrespective of whether a visa petition has been approved and the approval has not been revoked, *Matter of Bark*, Interim Decision No. 2174 (BIA, November 27, 1972). Thus the special inquiry officer had the authority to consider the question of the bona fides of respondents' marriages, as he did.

Counsel contends that the testimony of respondents and their new spouses constitutes proof of the bona fides of the new marriages. Credibility is always at issue. The special inquiry officer and this Board must determine the weight to be given testimony of witnesses.

Counsel complains that the special inquiry officer's decision was not based on clear, convincing and unequivocal evidence, which is the required standard of proof for an order of deportation, *Woodby* v. *INS*, 385 U.S. 276 (1966). These respondents conceded deportabil-

ity (Tr. of hearing of February 9, 1972, p. 2, line 6). Their deportability was therefore established by clear, convincing, and unequivocal evidence. The issue here involved is not whether the respondents are deportable—they have already conceded that they are—but whether they merit the extraordinary relief from deportation of adjustment of status to permanent resident. Both respondents claim eligibility for adjustment of status on the basis of marriage to a United States citizen. The burden in fact rests on the respondents to establish that they are eligible for the relief they seek. They must show that their marriages are bona fide in order to establish their eligibility for adjustment of status.

Counsel contends that respondents' Sixth Amendment right to confront witnesses and cross-examine evidence was violated. The Sixth Amendment applies to criminal cases. Deportation proceedings are civil in nature. However, by section 242(b) of the Act, an alien has the right at a deportation hearing to examine the evidence against him and to cross-examine witnesses presented by the Government. Counsel contends that the respondents were not afforded an opportunity to cross-examine the Service investigator of respondents' cases. This contention is without foundation as the Service investigator appeared as a witness at the hearing held June 19, 1972 and was cross-examined by counsel.

Counsel further contends that the special inquiry officer was biased and prejudiced towards counsel and the respondents. The record contains no indication of any bias or prejudice on the part of the special inquiry officer.

The special inquiry officer's decision gives a careful exposition of the evidence in the record, which indicates that respondents' April 1972 marriages were sham. After a careful evaluation of the record, we concur with the conclusion of the special inquiry officer.

**ORDER:** The appeal is dismissed.