Francisco **ESPINOZA OJEDA**, Petitioner,

v.

**UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 23713.

United States Court of Appeals
Ninth Circuit.

Dec. 9, 1969.

David C. Marcus (argued), Los Angeles, Cal., for petitioner.

Stephen M. Suffin, I. & N. S., San Francisco, Cal., William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., Joseph M. Sureck, Reg. Dir., I. & N. S., San Pedro, Cal., John N. Mitchell, Atty. Gen. of U. S., Washington, D. C., for respondent.

Before BARNES and TRASK, Circuit Judges, and PLUMMER,* District Judge.

BARNES, Circuit Judge.

Petitioner was deported from the United States to Mexico on December 30, 1968 as the result of the findings filed on March 14, 1968 by a Special Inquiry Officer of the Immigration and

---

* Hon. Raymond E. Plummer, Chief Judge, U. S. District Court, Anchorage, Alaska, sitting by designation.

Naturalization Service. (C.T. 14–28) An appeal taken to the Board of Immigration Appeals was dismissed on August 22, 1968. (C.T. 3) Petitioner filed this appeal on December 30, 1968 under section 106 of the Immigration and Nationality Act, 8 U.S.C. 1105a(a).[1] We affirm.

### (a)  History of the Case

Petitioner was issued an Immigrant Visa on January 9, 1967 and was admitted to the United States on January 12, 1967 at San Ysidro, California. The sole basis for the issuance of the visa was his representation to the American Consular Officer at Tijuana, Mexico of his marriage to an American citizen, Maria Elena Encinas. (C.T. 217) As a spouse of an American citizen, he was entitled to enter the country without a certificate from the Secretary of Labor as otherwise required by Section 212 (a) (14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (14).

On May 19, 1967, an Order to Show Cause and Notice of Hearing was issued by the Department of Immigration and Naturalization. (C.T. 202) It contained thirteen factual allegations (C.T. 202, 204) and three charges, each of which classified petitioner as an "excludable alien" subject to deportation under Section 241(a) (1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a) (1).

The factual allegations were, in substance, that petitioner participated in a sham marriage ceremony on October 14, 1966 in Tijuana, Mexico with one Caroline Rios Gallegos, who at that time was using the name Maria Elena Encinas; that Caroline Rios Gallegos had been married to one Roberto Gallegos since 1961; and that the sole purpose of the marriage ceremony was to acquire benefits under the immigration laws of the United States, and not to create a bona fide husband and wife relationship.

The three charges contained in the Order to Show Cause were each based upon section 241 of the Immigration Act (8 U.S.C. § 1251). Section 241 is the broad operative provision of the Act that delegates power to the Attorney General to deport certain aliens from the country. Subsection (a) (1) provides for deportation of any alien who "at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry."

Section 212(a) (8 U.S.C. § 1182(a)) is the definitional provision of the Act that lists those classes of excludable aliens that are ineligible to receive visas and that are deportable under Section 241(a) (1), supra. The charges filed by the Department of Naturalization and Immigration alleged that petitioner fell into three of the excludable classes defined by § 212(a).

First, it was alleged that under subsection (a) (20) petitioner at the time of his "application for admission [was] not in possession of a valid unexpired immigrant visa." Second, it was alleged that under subsection (a) (19) petitioner sought " * * * to enter the United States, by fraud, or by willfully misrepresenting a material fact." Third, it was charged that under subsection (a) (14) petitioner entered the country for the purpose of performing skilled or unskilled labor without the required certificate from the Secretary of Labor.

### (b)  The Findings of the Special Inquiry Officer

The Special Inquiry Officer determined from petitioner's positive courtroom identification of a photograph of his alleged wife (Ex. 5) and uncontroverted documentary evidence that petitioner participated in the marriage ceremony of October, 1966 with Caroline Gallegos, not Maria Elena Encinas. A Mexican statute in force at the time of the ceremony was translated and in-

---

1. After petitioner was deported, a motion by respondent to dismiss this appeal for lack of jurisdiction under 8 U.S.C. § 1105a(c) was denied by this court on February 25, 1969.

troduced into evidence; it provided that if either party entering into a marriage was married at the time of the ceremony then the ceremony was null and void. (C.T. 18 and Ex. 15) Voidness of the October 1966 marriage ceremony was then conclusively established by the introduction of a marriage certificate (Ex. 14) showing that Caroline Gallegos had married Roberto Gallegos on August 5, 1961. In addition, uncontroverted testimony of the Gallegos' at a November 1967 hearing demonstrated that neither spouse had ever instituted a divorce proceeding. (C.T. 137)

The Inquiry Officer also observed that petitioner's visa and supporting documents represented that he was a farm worker not entering to do farm work, but one entering the country to join his wife (Ex. 2, C.T. 206–220(a)). On the basis of these representations, petitioner's visa was stamped "Sec. 212 (a) (14) Not Statutorily Required."

The Inquiry Officer concluded that the issuance of petitioner's visa for entry into the United States "could only [have been] based upon his marriage to a United States citizen." (C.T. 17) Although this finding alone would have supported the deportation order, the Inquiry Officer went on to consider the charge that petitioner had acquired his visa through fraudulent misrepresentation.

On the fraud issue, the testimony of Roberto and Caroline Gallegos (summarized, *infra*) and a sworn statement taken from petitioner by an investigator employed by the Immigration and Naturalization Service (Ex. 3, C.T. 222, summarized, *infra*) were in conflict with the testimony given at the hearing by the petitioner and his brother, who was present and had intimate knowledge of the events surrounding the invalid marriage.

The testimony of Roberto Gallegos was summarized in the following manner by the Inquiry Officer in his decision:

"The witness admitted that he brought girls to Mexico to enter into marriages with Mexican aliens on about three occasions when the *respondent was present.* The witness said the girls he brought to Tijuana from the United States were paid $75 each. He did this about eight times during a three-month period, usually getting girls through friends. His sister-in-law entered into three such marriages using three different birth certificates. He stated that he had his wife, Caroline, enter into only one such marriage (to the respondent) for which he was paid $150 by Arturo Avila. The witness asserted that following the wedding of his wife and the respondent, the latter at no time came to the home of the witness." (C.T. 20) (Emphasis added)

His wife Caroline testified in the following manner as summarized by the Inquiry Officer:

"Caroline Rios Gallegos also appeared as a government witness and testified that * * * [s]he used the name of a friend, Maria Elena Encinas, and the latter's baptismal certificate to marry the respondent [petitioner] because she had previously used her own birth certificate which was retained by Avila and was not returned to her. She received $150 from Arturo Avila for marrying the respondent." (C.T. 20–21)

Petitioner's brother, Juan Espinoza, attempted to rebut this evidence by testifying that petitioner had corresponded with him in August, 1966, regarding petitioner's proposed marriage to one Maria Elena Encinas, and that he, Espinoza, had not learned until the day petitioner had been taken into custody that the woman his brother had married was not named Maria Encinas, was already married to Roberto Gallegos and was the mother of three children. He asserted his complete ignorance of these facts notwithstanding his presence at the marriage ceremony, which Roberto Gallegos also attended. He stated that Caroline Gallegos had identified Roberto at the ceremony as her cousin. (C.T. 23)

Petitioner took the stand in his own behalf in an apparent attempt to

discredit his sworn statement, *supra*, of May 19, 1967.[2] The essence of that statement was summarized by the Inquiry Officer at pages 10 and 11 of his decision. (C.T. 23–24)

In the statement petitioner admitted that he had never had sexual relations with Maria Encinas; that he had never intended to reside with her; and that he married her to obtain his visa because "it could not be arranged in any other way. They do not issue permits." (C.T. 227)

Petitioner did not disclaim his statement when a translation of it was read into the record of the hearing of June 21, 1967. The hearing was continued on July 27, 1967 at which time petitioner testified in his own behalf that he had met Maria Encinas on two occasions, the second of which was on October 14, 1966, the day of the marriage ceremony in Tijuana.

The Inquiry Officer found the testimony of the Gallegos' "credible" and that of petitioner and his brother to be "totally lacking in candor and probity." (C.T. 26) Moreover, he characterized petitioner's testimony concerning the events leading up to the invalid marriage in the following manner:

"The respondent's [petitioner's] testimony is replete with distortions, half truths, misleading responses, evasions and equivocations. His account of how he first met 'Maria Encinas' on January 10, 1966 and again nine months later in October 1966, on the day they were married, is a clumsy unbelievable fabrication, completely devoid of plausibility, and not even possessing the attribute of clever imaginativeness." (C.T. 27)

The Inquiry Officer concluded that the government had met its burden of establishing deportability on each of the three charges by clear, unequivocal and convincing evidence under the evidentiary standard enunciated by the Supreme Court in Woodby v. Immigration and Nat. Serv., 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362. (C.T. 27) The Board of Immigration Appeals affirmed and this appeal followed.

### (c) *Issues on Appeal*

We view this appeal as raising the single issue suggested by the government: Was petitioner's deportability established by clear, convincing and unequivocal evidence? We think it clearly was.

In the case of Woodby v. Immigration and Nat. Serv., *supra,* the Supreme Court said:

"We hold that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." 385 U.S. 286, 87 S.Ct. 488.

The Court distinguished burden of proof—a quantitative standard—from the scope of judicial review, which it noted Congress had defined in qualitative terms in §§ 106(a) (4) and 242(b) (4) (8 U.S.C. §§ 1105a(a) (4), 1252 (b) (4)) of the Immigration Act as "reasonable, substantial, and probative evidence on the record considered as a whole." Thus we are bound to determine in this case whether the government met the qualitative and quantitative evidentiary standards of *Woodby.*

■■ Petitioner argues that the Special Inquiry Officer's acknowledgment of the "despicable" acts of the Gallegos' in arranging sham marriages is in conflict with his characterization of their testimony as "credible." We disagree. As with testimony before a trial court, credibility is best evaluated in administrative proceedings by the departmental officer directly observing the witness giving the testimony. If his evaluation of credibility rests upon reasonable, sub-

---

**2.** Petitioner claims in his brief (at 18–19) that the statement was improperly admitted into evidence; he also notes that no objection was made at that time by counsel representing petitioner. Any objection to the entry of the statement into evidence was thus waived. See Chi Sheng Liu v. Holton, 297 F.2d 740 (9th Cir. 1961).

stantial and probative evidence, we must not disturb it. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590; Sigurdson v. Landon, 215 F.2d 791 (9th Cir. 1954); *cf.* Shing Hang Tsui v. Immigration and Nat. Serv., 389 F.2d 994 (7th Cir. 1968).

In *Sigurdson* this court, in reviewing a habeas corpus proceeding that concerned the issue of whether a deportation order should be enforced, stated the following:

> "The hearing officer saw and observed the two witnesses. It was for him, not for us or for the trial judge, to say whether their testimony, then given in his presence, should be credited." 215 F.2d at 796.

In the second part of his argument, petitioner asserts that, because he lacked full knowledge surrounding the invalid marriage, he did not fraudulently apply for a visa. This contention was put forth at the hearing and rejected by the Inquiry Officer. In view of the testimony summarized, *supra*, the Officer's findings and conclusions were well supported by clear, unequivocal and convincing evidence, and we so hold.

The final portion of petitioner's argument asserts that the government did not meet its burden of proof in establishing that the Secretary of Labor had *not* issued a certificate as required by § 212(a) (14) (8 U.S.C. § 1182) of the Immigration Act. 29 C.F.R. Part 60, Schedule B. As we read the statute, petitioner *was* in the excludable class of persons defined by subsection (14) *"unless"* (emphasis added) the Secretary of Labor had made a determination and certification regarding the insufficiency of the work force in the area of the United States in which the petitioner intended to settle and work. This, in our estimation, put the burden on the *petitioner* to show affirmatively that he was in some manner exempted from the class of excludable aliens. This, of course, he did not do.

We do not read United States v. Rossi, 299 F.2d 650 (9th Cir. 1962), a denaturalization case, or United States ex rel. Leibowitz v. Schlotfeldt, 94 F.2d 263 (7th Cir. 1938) as having any significant relationship to the issues raised in this case. The decision of the Board of Immigration Appeals is affirmed.