SHERWIN–WILLIAMS COMPANY,
Plaintiff,

v.

REGIONAL MANPOWER ADMINISTRA-
TOR OF the UNITED STATES DE-
PARTMENT OF LABOR, Defendant.

No. 76 C 220.

United States District Court,
N. D. Illinois, E. D.

May 4, 1976.

Samuel D. Myers, Freedman, Freedman & Myers, Ltd., Chicago, Ill., for plaintiff.

U. S. Atty., Thomas P. Sullivan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

Sherwin-Williams Company challenges by this action the refusal of the Regional Manpower Administrator of the United States Department of Labor (RMA) to certify an alien employee, Matthew George, as eligible to receive a visa entitling him to work within the United States.

The applicable statute, 8 U.S.C. § 1182, describes a variety of classes of aliens who are to be excluded from admission into the United States. Among these classes are those aliens who seek to enter the country for the purposes of performing skilled or unskilled labor. However, 8 U.S.C. § 1182(a)(14) does provide a procedure whereby in certain circumstances certification and visas may be granted to otherwise excludable individuals seeking to perform such work. The statute reads as follows:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

.        .        .        .        .

"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. .     ."

Matthew George is a citizen of India with a B.S. (five years study) in Chemistry from Kerala University. He was continuing his studies at Roosevelt University in Chicago when he responded to a newspaper advertisement placed by Sherwin-Williams for a responsible and difficult position involving laboratory work with various classes of resins. Asserting that "qualified persons are extremely difficult to find in the Chicago area", Sherwin-Williams applied on August 27, 1974, for employment certification pursuant to § 1182(a)(14) from the RMA, to whom the Secretary of Labor had delegated the statutory responsibility for this task.

The RMA contacted the Illinois State Employment Service (ISES) which advised the RMA that it had listings of 20 available American applicants for work as organic chemists, and had notice of only four active job openings in this field. Relying on this information, the RMA denied on March 18, 1975, the application for certification, giving the following explanation:

"Illinois State Employment Service reports they currently have 20 qualified applicants listed in their active application files for this job offer. You were given an opportunity by the state agency to receive referrals, but we understand you failed to respond to the state agency letter."

On June 3, 1975, Sherwin-Williams requested a review of the denial pursuant to 29 C.F.R. 60.4(b). In the course of the review, Sherwin-Williams sought to impeach the RMA's findings. Nonetheless, on December 17, 1975, the reviewing officer denied certification. The decision of the reviewing officer again relied on the ISES

data, and rejected the plaintiff's attempts to impeach the original finding regarding "the availability of United States workers able, willing and qualified to perform the duties of Organic Chemist."

On January 21, 1976, Sherwin-Williams filed this action seeking review of the RMA's decision under the Administrative Procedures Act, 5 U.S.C. § 704, a declaratory judgment in its favor, and a writ of mandamus directing the defendant to issue the alien employment certification. The defendant, through the United States Attorney, has moved for summary judgment.

■ In recent years many of the troubling standing and jurisdictional questions affecting § 1182(a)(14) cases have been resolved by the courts. It is now clear that an employer does have standing to challenge the denial of certification of an alien employee. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Sec. of Labor of U.S. v. Farino,* 490 F.2d 885 (7th Cir. 1973).

■ Similarly a district court may reverse the decision to deny labor certification where the Secretary or his delegate abused his discretion by basing the decision on evidence neither reliable nor sufficient for the finding required by the statute. *Shuk Yee Chan v. RMA,* 521 F.2d 592 (7th Cir. 1975); *First Girl, Inc. v. RMA,* 499 F.2d 122, 124 (7th Cir. 1974); *Digilab, Inc. v. Sec. of Labor,* 495 F.2d 323, 327 (1st Cir. 1974); *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971); *Bitang v. RMA,* 351 F.Supp. 1342, 1344 (N.D.Ill.1972, Tone, J.).

Essentially, the RMA contends that the 1965 amendments to the statute places the burden on the applicant for certification to affirmatively show that there is reason to grant an exemption. *Espinoza Ojeda v. U.S. Immigration & Nat. Service,* 419 F.2d 183, 187 (9th Cir. 1969). The strongest language in defense of the RMA's position may be found in *Pesikoff v. Secretary of Labor,* 163 U.S.App.D.C. 197, 201, 501 F.2d 757, 761 (1974), where the court stated:

"This structuring of the statute strongly indicates that the Secretary is not obligated to prove in the case of every alien seeking entry to perform labor that the conditions are not met. Given the presumption of the statute against admission, if the Secretary's consultation of the general labor market data readily available to him suggests that there is a pool of potential workers available to perform the job which the alien seeks, the burden should be placed on the alien or his putative employer to prove that it is not possible for the employer to find a qualified American worker."

Arguing from this position, the defendant asserts that the bare recitation of ISES statistics that there are twenty people registered and seeking chemistry positions suffices to show the existence of qualified workers to fill Matthew George's position. The government, in effect, argues that plaintiff can obtain certification only by a refutation of the ISES statistics.

■ *Pesikoff, supra,* does not represent the law of this Circuit. The Seventh Circuit has repeatedly refused to accept the mere incantation of raw data from the ISES as sufficient evidence of the availability of acceptable American workers. More importantly, the Seventh Circuit has construed, properly in my judgment, the requirements of § 1182(a)(14) in the context of the entire standard enunciated therein. The language of the statute does not merely refer to available American workers, but also requires that these workers be shown to be "able, willing, [and] qualified". Where the data used by the RMA only tends to show that some American workers are available to fill the position sought by the alien, there is still an insufficient evidentiary basis for a denial of certification. As the Seventh Circuit recently reiterated in *Shuk Yee Chan, supra,*

"Nor will we approve of such a procedure where, as here, the data upon which the RMA's decision rested amounted to nothing more than a conclusory finding by the Illinois State Employment Service without any showing that the persons listed

as available for the occupation . . . were actually 'able, willing, qualified and available' to perform the labor which formed the basis of appellee's application for certification. 8 U.S.C. § 1182(a)(14)." 521 F.2d at 595–96.

*See also Bitang, supra,* 351 F.Supp. at 1345.

█ This is similar to the language used by Judge Matsch in *Xytex Corporation v. Schliemann,* 382 F.Supp. 50, 53 (D.Colo. 1974):

"The statute requires those entrusted with the responsibility of its enforcement to consider not only the availability of non-alien workers, but also they must be in sufficient number, they must be able, they must be willing, they must be qualified and they must be available at the time and place pertinent to the application. Each of these aspects must be addressed upon the basis of specific information."

Where the Secretary has failed to collect evidence on all these points, the denial of certification is a reversible abuse of discretion. See also footnote seven to the partial dissent to *Pesikoff,* 501 F.2d at 767, where Judge MacKinnon relies on *First Girl, Inc. v. RMA,* 361 F.Supp. 1339 (N.D.Ill.1973) (Bauer, J.), *aff'd,* 499 F.2d 122 (7th Cir. 1974), for a similar close construction of the statute. Judge MacKinnon concludes "I am unwilling perfunctorily to assume that the 'available' workers to which the Secretary refers are necessarily also 'able, willing, [and] qualified.' "

The *Pesikoff* majority conceded at footnote 9, 501 F.2d 762, that its statutory interpretation was contrary to the holdings of several Illinois and Massachusetts district courts. Since then, despite the *Pesikoff* reasoning, *First Girl* has been affirmed by the Seventh Circuit, and the First Circuit has adopted the reasoning in *Digilab, supra.* Judge Tone's opinion in *Bitang v. RMA, supra,* has been endorsed and extensively quoted by the Seventh Circuit in recent cases such as *Shuk Yee Chan, supra.*

The weakness of the defendant's position, and of the *Pesikoff* construction lies not only in its avoidance of the full language of the statute. As Judge MacKinnon noted

"[T]he majority would have the employer carry the ultimate burden of persuasion that he has been unable, or that it is impossible, to find an 'able, willing and qualified' American worker—in a sense, then, the majority would have him prove the existence of the non-existent, a sometimes difficult proposition." 501 F.2d at 771.

Since it is clearly not feasible for an employer to affirmatively and conclusively show that acceptable alternative American workers do not exist, the denial of certification must rest on some meaningful evidence. The Seventh Circuit has indicated that a denial of certification will be reversed where the evidence relied upon is impeached and shown to be wanting in reliability. *Secretary of Labor v. Farino,* 490 F.2d 885 (7th Cir. 1973).

In *Farino* the government also relied heavily upon ISES data. The court found sufficient impeaching evidence to warrant reversal in representations that ISES statistics were compiled without verification of the applicants' qualifications and that the lists of available workers were not cleared of those applicants who had either found work, retired or left the area.

Indeed the courts of this district and the Seventh Circuit have repeatedly reversed the Secretary and his delegate for reliance upon the dubious statistical data churned up by ISES.

Judge Tone expressed great skepticism of the trustworthiness of ISES methodology in *Bitang v. RMA, supra.* He criticized sharply the Secretary of Labor for abdicating his statutory fact-finding obligations in favor of "blind and unquestioning acquiescence in a state agency's ultimate conclusions". 351 F.Supp. at 1345. Even if the doubtful numbers provided by ISES were correct, they had no relationship to the federal standard of "able, willing, qualified and available."

In *First Girl, supra,* the trial court commented that the fact that people may claim to be qualified and have registered with ISES cannot show that they were either

qualified or even are truly available. It added that where the RMA relied solely upon such bare data there was no "evidence in the record supporting defendant's determination". The Seventh Circuit affirmed, calling the RMA's findings "arbitrary and baseless" and a reversible abuse of discretion.

Again in *Shuk Yee Chan, supra,* (decided September 4, 1975), the Seventh Circuit had another opportunity to comment on the accuracy and reliability of information put forth by ISES. It agreed with Judge Marshall that such data was "shrouded in doubt". 521 F.2d at 594. And once again the Seventh Circuit felt impelled to criticize the repeated reliance of the present defendant upon such dubious evidence.[1]

"[E]ven if the RMA, as he has argued, did ground his decision to deny appellee's application upon information from the Illinois State Employment Service to the effect that there were people available for the occupation for which appellee sought certification, *we refuse at this writing to place our stamp of approval upon an administrative procedure which appears to have involved a perfunctory exercise of acquiescence in the statistical compilations of the state employment service.*" 521 F.2d at 595. (Emphasis added.)[2]

■ Sherwin-Williams has sought to impeach the ISES evidence through various methods. Particularly persuasive is the showing that the RMA had approved certification applications for several chemists during the period in which this application was being considered. The reviewing officer casually dismissed this evidence with the comment that "Applications for alien employment certification are independently adjudicated. Prior approvals demonstrates [sic] individuality." Nonetheless it is clear that prior certifications are highly relevant and seriously damaging to the contention of the RMA that there are available qualified non-aliens for the requested line of work. In *Mirza Ali Baig v. RMA,* No. 74 C 550 (N.D.Ill. Sept. 27, 1974), Judge Marovitz commented that

"the presumption of regularity [of the data relied upon by the RMA] has been burst herein by plaintiff's revelation that seemingly identical subsequent applications from a chemist and two chemical engineers were certified . . . [T]he evidence sufficiently impeaches the regularity and reliability of the decision of the Regional Manpower Administrator to warrant the remand of this case for further administrative proceedings . ." (At 5–6.)

Plaintiff also presented as impeaching evidence its own assertions of difficulty in finding qualified U. S. chemists and the extensive want ad listings for such positions at the time of this application. The court cannot say that this evidence is totally without effect. It tends to make apparent what Judge MacKinnon described as "the tension between the theoretical [employment service data] and the actual availability of qualified workers." 501 F.2d at 771. Such a tension should be resolved in favor of the employer. Indeed the very fact that Sherwin-Williams is willing to undertake a lengthy and costly administrative and judicial appeal to retain the services of this alien is not without bearing on the reliabili-

---

1. See also *Pesikoff, supra,* at 501 F.2d 771–72, where Judge MacKinnon notes that the reliability of the Texas equivalent of ISES "*has* been impeached *and by the Secretary* [of Labor] *himself.*" (Emphasis in original.) Judge MacKinnon cites counsel for the Secretary of Labor stressing the unreliability of state employment service statistics.

2. The court notes its concern that the brief of the United States Attorney did not attempt to either cite or distinguish this long line of opinions in the Seventh Circuit and in this district directly adverse to his position. While he would be fully proper in attempting to argue that these cases are wrongly decided in light of the *Pesikoff* reasoning, *Farino, First Girl, Shuk Yee Chan* and *Bitang* are certainly essential to the construction of the statute in this Circuit. Furthermore, they are cases in which the U. S. Attorney participated. Where such a valuable right as the privilege of remaining and working in America is at stake, the briefs presented by the government to the court should not leave the discovery of the relevant law to the fortuity of competent adverse counsel.

ty of the RMA's contention that qualified American chemists can be easily obtained.

Additionally, it might be noted that even if it can be proved that there are sixteen more American chemists with applications placed at ISES than positions presently available, these statistics reveal virtual full employment of American chemists in this area. Evidence has been submitted that recently there were as many as 5,000 active chemist jobs in Chicago. Where 99.7 of the non-alien chemists in Chicago area are employed, the shortage of positions should properly be viewed as *de minimis*. Judge Tone commented in *Bitang, supra*:

> "The result might be different if the numbers of persons listed with the employment service as allegedly seeking positions in plaintiffs' occupations were of such magnitudes as to make it reasonable to discount those who had falsely listed their qualifications or their lack of current employment or who had not yet had their names removed after they had in fact found employment. . . . [T]he numbers of applicants listed by the service were so small, given the size of the accountant population in the Chicago area, as to amount to no evidence of a shortage when combined with the lack of any evidence that those listed were in fact 'able,' 'qualified,' and still 'available.'" 351 F.Supp. at 1345.

■ Finally, the RMA's decision effectively establishes consultation with and use of the state employment service as a condition precedent for job certification. Such a construction of the law is based neither upon the language of the statute nor any properly approved administrative regulations. As such the decision of the RMA exceeded the statutory powers granted to the Secretary of Labor and his delegate. *American Ship Building Co. v. NLRB,* 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965); *Jersey Plastic Molders, Inc. v. Secretary of Labor,* No. 74–845 (D.N.J.1975).

■ In sum, the motion for summary judgment of the defendant Regional Manpower Administrator of the United States Department of Labor must be denied. The denial of alien labor certification for Matthew George constituted an abuse of discretion inasmuch as it was not based upon reliable evidence that there are "sufficient workers in the United States who are able, willing, qualified and available" to perform the position sought by the applicant.

In light of the previous decisions of courts in this Circuit, this court *sua sponte* reverses the decision of the defendant and remands this case for further administrative proceedings in accordance with the statutory requirements of 8 U.S.C. § 1182(a)(14).