**Rodolfo Monroy BARIA, Plaintiff,**

**v.**

**Janet LENO (sic), United States Attorney General, and Donald Radcliffe, District Director, Immigration and Naturalization Service, Defendants.**

**Civ. No. 93–00834 HMF.**

United States District Court,
D. Hawaii.

April 29, 1994.

George K. Noguchi, Honolulu, HI, for plaintiff.

Michael Chun, Asst. U.S. Atty., U.S. Atty's Office, Mary Reiko Osaka, Dept. of Justice, I.N.S., Honolulu, HI, for defendants.

ORDER GRANTING DEFENDANTS' MO-TION TO AMEND MOTION TO CON-SIDER SUBMISSION ON THE REC-ORD AND GRANTING DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

## INTRODUCTION

On April 18, 1994 the court heard defendants Janet Reno and Donald Radcliffe's

(collectively "the government") motion to amend the motion to consider submission on the record and motion for summary judgment. The government filed their motion to consider submission on the record on February 28, 1994. On March 4, 1994, the government filed a motion to amend the motion to consider submission on the record as it appeared that the motion was more appropriately submitted as a motion for summary judgment. Plaintiff Rodolfo Monroy Baria ("Baria") filed an untimely response on April 13, 1994.

Since the court agrees that the motion submitted by the government is properly categorized as a motion for summary judgment, the court GRANTS the government's motion to amend their original submission and the present motion will be considered as a motion for summary judgment.

## BACKGROUND

Baria is a native and citizen of the Philippines who entered the United States as a nonimmigrant visitor for pleasure in June 1984 and with extensions was authorized to remain until June 13, 1985. About two months after entering the United States, he filed divorce proceedings in Nevada against his wife of twenty one years, Anita Baria ("Anita"), who resided in the Philippines with the couple's three children. The divorce decree dissolving plaintiff's first marriage was signed on May 31, 1985.

About four months after filing for divorce in Nevada, plaintiff moved to Honolulu and in December of 1984 began residing in a husband and wife relationship with Bibiana Patoc ("Patoc"), an American citizen. Patoc and Baria were married in Honolulu on June 14, 1985, about one month after the divorce from Anita became final and the day after his authorized stay expired.

On July 10, 1985, Patoc petitioned for immediate relative status on behalf of Baria. A visa petition was filed simultaneously. The visa petition was approved, and the respondent's status was adjusted to that of a lawful permanent resident on September 20, 1985. About a year later, during October or November of 1986, Patoc and Baria separated.

In March 1987 Patoc informed the service that Baria had left the residence they shared and had told her he had married her to gain immigration benefits. On January 28, 1988, the Immigration and Naturalization Service ("INS") issued a notice of intent to rescind plaintiff's adjustment status under § 246 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1256, based on the allegation that plaintiff's marriage to Patoc was a sham marriage and could not be recognized for immigration purposes. Plaintiff contested the proposed rescission, and a hearing was held before an immigration judge on December 12, 1988.

According to Patoc's hearing testimony and affidavit submitted in conjunction with the rescission proceeding, she originally believed that the marriage was genuine, but she later learned that plaintiff was using her in order to obtain United States citizenship. Patoc testified that after Baria obtained his green card, his behavior towards her changed. She reported that she discovered that respondent continued to correspond with his first wife, Anita, in the Philippines by using a private post office box. Patoc produced a letter that purportedly had been written by Anita in which she thanked Baria for the money he had provided her family, expressed her love for him, informed him that she looked forward to an upcoming visit, and related family gossip. The letter also mentioned that despite Anita's initial concern that Baria's marriage to Patoc was genuine, she had become convinced that such was not the case.

Patoc testified that when she confronted Baria about his relationship with his former wife and accused him of marrying her for immigration benefits, he stated that it did not matter if she divorced him, because he would merely marry someone else to acquire citizenship. Patoc also testified that Baria told her that if she ended their marriage he would represent to the INS that he paid Patoc to marry him.

The record of the rescission hearing further indicates that after Baria and Patoc separated, Baria became involved with a third woman with whom he had a child. Patoc was distraught over this relationship

and wrote letters to Baria, his girlfriend, and his girlfriend's mother in an effort to have Baria terminate this relationship and reconcile with Patoc. The letters also threaten to have Baria returned to the Philippines if the relationship with his girlfriend did not end. Patoc testified that she wrote these letters when she was "mentally tortured."

Patoc conceded that the marriage had been consummated and that she and Baria lived in the same household for approximately fifteen months after their marriage. Baria also assisted with household charges and made financial contributions to household expenses. She testified that she loved Baria when they married and stated that she was not sure whether she would get back together with Baria if he offered.

Baria testified that his marriage to Patoc was a genuine relationship. He insisted that before he arrived in the United States he had no plans to divorce Anita, although the marriage was strained. When questioned about the letter, he testified that he had never received it, that his former wife sometimes called him by the name used in the letter's salutation, that he would not say whether or not it was written by his ex-wife, and that the letter might have come from her.

The immigration judge concluded that the INS had not met its burden of establishing unequivocally, clearly, and convincingly that the respondent participated in a fraudulent marriage to obtain an immigration benefit and terminated rescission proceedings. *See In the Matter of Baria,* File No. A 27 257 374 (Rescission Proceedings December 12, 1988) at 6 (ROP document marked "C"). The immigration judge noted that there was circumstantial evidence that the marriage was a sham. *Id.* at 4. The judge stated that plaintiff's behavior in divorcing his wife of twenty one years and marrying an American citizen immediately upon his arrival in this country might lead a reasonable person to conclude that Baria's immigration was a carefully orchestrated fraud on the United States Government. *Id.* at 5. The immigration judge also found that the plaintiff's testimony was "scattered and imprecise" and that his credibility was "somewhat impeached" with regard to his testimony that he had no plan to

end his first marriage when he arrived in the United States. *Id.* Nevertheless, the immigration judge concluded that the standard was not what a reasonable person might believe but whether the INS could establish clearly, unequivocally and convincingly that plaintiff had engaged in a sham marriage. *Id.* at 6. Since Patoc testified that she genuinely loved Baria when they married, that the marriage was consummated, and that she might be willing to resume a marital relationship with him, the immigration judge concluded that the INS had failed to meet their burden of proof. *Id.*

The INS appealed to the Board of Immigration Appeals ("BIA") arguing, among other things, that Patoc's intent at the time of the marriage is not dispositive, particularly against the weight of the circumstantial evidence and plaintiff's impeached credibility.

The BIA affirmed the immigration judge's findings of credibility and circumstantial evidence. *See In Re Baria,* BIA File No. A27 257 374 (Aug. 25, 1993) (ROP document "A") at 5. However, the BIA reversed the immigration judge's finding that the evidentiary and credibility findings did not constitute clear, convincing and unequivocal evidence that plaintiff entered into the marriage for the primary purpose of obtaining immigration benefits. *Id.* at 4. The BIA agreed with the INS that Patoc's intent at the time she entered into the marriage was insufficient against the weight of other evidence to establish that plaintiff entered the marriage in good faith. *Id.* The BIA found that the circumstantial evidence and credibility findings were sufficient basis for rescission and ordered Baria's adjustment status to be rescinded. *Id.* at 5.

Following the order of rescission plaintiff was returned to the immigration status he held prior to adjustment of status—that of a nonimmigrant visitor authorized to remain only until June 13, 1985. Accordingly, the INS placed him in deportation proceedings as an alien who remained beyond the time authorized for his stay; those proceedings are pending.

Plaintiff objects to the government's motion on the grounds that the issue is not ripe

for summary judgment. Plaintiff, however, cites no support for this position. Because, as discussed below, the court is necessarily limited to the administrative record in its review of the BIA decision, plaintiff's objection is without merit. Plaintiff also objects to the court's consideration of this matter as a summary judgment motion at this time; plaintiff claims that he has had insufficient time to respond to the arguments in the government's motion and asks for an additional ten days within which to submit a brief to the court. The government filed the instant motion on February 28, 1994 giving plaintiff an ample forty nine days within which to respond. Accordingly, plaintiff's plea borders on the frivolous.

## STANDARD OF REVIEW

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 6 26, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

■ If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec.*, 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

## DISCUSSION

■ This court has jurisdiction to review a rescission decision under § 279, INA, 8 U.S.C. § 1329, when that decision is not made in conjunction with a final order of deportation. *See Cheng Fan Kwok v. INS*, 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968); *Jaa v. INS*, 779 F.2d 569, 571 (9th Cir.1986); *see also Tooloee v. INS*, 722 F.2d 1434, 1437 (9th Cir.1983).

■ The court declines to adopt the government's suggestion that jurisdiction in this case rests more properly with the Ninth Circuit Court of Appeals under § 106, INA, 8 U.S.C. § 1105a. Section 106 vests sole jurisdiction in the courts of appeals to review all final orders of deportation. *INS v. Chadha*, 462 U.S. 919, 937–40, 103 S.Ct. 2764, 2777–78, 77 L.E.2d 317 (1983). In *Waziri v. INS*, 392 F.2d 55 (9th Cir.1968), the Ninth Circuit held that its power to review a final order of deportation of the BIA under § 106 carried with it the power to examine the validity of the rescission order that underlies the deportation order. Where the final order entirely depends upon the rescission of status, the appellate court's review of the deportation order would be meaningless absent review of the rescission order. *Id.* 392 F.2d at 57; *see*

*also Bachelier v. INS,* 625 F.2d 902, 904 (9th Cir.1980).

Since Baria's adjustment of status was rescinded, he reverted to the status of a nonimmigrant alien who remained beyond the time authorized for his stay with no defense to the allegations of deportability. The government argues that Baria is essentially subject to a final order of deportation. Accordingly, review of the rescission order should be taken directly to the court of appeals since the Ninth Circuit apparently considers the review of a rescission order along with the deportation order more expedient than requiring the alien to pursue judicial review in each case separately. In addition, any review of the rescission order in this court at this time would be duplicative of the review of the rescission order by the Ninth Circuit should Baria choose to appeal his case once he is found deportable by an immigration judge.

However, the Ninth Circuit did not hold in *Waziri* that it had the power of direct review over a decision to rescind an immigrant's status absent a final order of deportation. *Bachelier,* 625 F.2d at 904. Nor did the Ninth Circuit retain for itself exclusive jurisdiction of rescission orders. While the court appreciates the logic of the government's position, absent Ninth Circuit case law directly on point, the court must follow the Supreme Court holding in *Cheng Fan Kwok* that § 106 only permits direct appellate court review of final orders of deportation. *Cheng Fan Kwok,* 392 U.S. at 216, 88 S.Ct. at 1976. Accordingly, since no final order of deportation has been entered in the present case, this court has jurisdiction under 8 U.S.C. § 1329.

The court has been unable to find any Ninth Circuit case law which specifically articulates the standard of review that a district court should apply when reviewing a BIA rescission determination under § 279, INA, 8 U.S.C. § 1329. As a result, the court will look for guidance to the general principles governing review of agency actions and the standard of review which the circuit court would be limited to when reviewing a rescission order in conjunction with a deportation order.

■ Agency findings arising from public, record producing proceedings are generally subject to the "substantial evidence" standard of review. *McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981); *see also Chavez v. INS,* 723 F.2d 1431, 1432 (9th Cir.1984) (actual findings of BIA reviewed under substantive evidence standard). Similarly, in reviewing an administrative rescission decision, the scope of an appellate court's review is limited to whether the administrative tribunal used the proper standard of proof in making its findings below and whether those findings are supported by reasonable, substantial and probative evidence. *Espinoza–Ojeda v. INS,* 419 F.2d 183, 186 (9th Cir. 1969); *Yaldo v. INS,* 424 F.2d 501, 503 (6th Cir.1970) (citing *Woodby v. INS,* 385 U.S. 276, 281–282, 87 S.Ct. 483, 485–86, 17 L.Ed.2d 362 (1966); *see also Kokkinis v. District Director,* 429 F.2d 938, 942 (2nd Cir.1970) (if correct burden of proof is applied, inquiry limited to whether findings supported by reasonable substantial and probative record considered as a whole). A court reviewing an agency decision is not permitted to substitute its judgment for that of the BIA or the immigration judge with respect to the credibility of testimony or the ultimate findings of fact based thereon. *See Espinoza–Ojeda,* 419 F.2d at 186–87 (9th Cir, 1969); *Yaldo,* 424 F.2d at 503.

■ Accordingly, the court holds that its review of a BIA rescission determination under § 279 is limited to a substantial evidence standard of review. Under a substantial evidence standard review is necessarily limited to the administrative record. The case is therefore ripe for determination as a matter of law on summary judgment.

■ In a rescission hearing, the government bears the burden of establishing by clear, unequivocal, and convincing evidence that the adjustment of status was improperly granted. *Kim v. Meese,* 810 F.2d 1494, 1496 (9th Cir.1987). Resolution of the question of improper adjustment of status depended upon a determination of whether the marriage upon which Baria's adjustment of status was valid for immigration purposes or contracted primarily for the purpose of cir-

cumventing the immigration laws. *See generally Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). The central question is whether the bride and groom intended to establish a life together at the time of the marriage. *See Bark v. INS,* 511 F.2d 1200, 1201 (9th Cir.1975). A determination of intent entails an evaluation of the credibility of the parties along with the conduct of the parties and the circumstances involved. *Id.; see also Espinoza–Ojeda, supra; Yaldo supra.*

 In the present case, the BIA recognized and applied the correct standard of proof by requiring that the INS prove that Baria's adjustment of status was improperly granted by a showing that "clear, unequivocal, and convincing evidence" established that Baria's marriage to Patoc was a sham. *See In Re Baria,* BIA File No. A27 257 374 (Aug. 25, 1993) (ROP document "A") at 3. Where the BIA has made such a finding, the only issue for this court to consider is whether the BIA decision is supported by reasonable, substantial and probative evidence.

A review of the entire administrative record indicates that the BIA's decision to rescind Baria's status was supported by reasonable, substantial and probative evidence. The administrative record shows that immediately after Baria entered the United States and established the six week residency requirement in Nevada, he petitioned for divorce from his wife of twenty-one years. Baria then travelled to Hawaii and met and married an American citizen within a short period of time. This marriage allowed Baria to obtain an adjustment of status to that of a lawful permanent resident. Baria separated from his U.S. citizen spouse about one year after obtaining such immigration benefits. The immigration judge found that Baria's behavior constituted circumstantial evidence of fraud.

The circumstantial evidence of fraud was corroborated by Patoc's testimony and the letter from Baria's first wife which states that Baria's marriage to Patoc was a ploy to gain immigration benefits.

The only evidence contradicting this circumstantial and testamentary evidence of fraud is Baria's own testimony which the immigration judge found strained credulity. Accordingly, there is ample evidence on the administrative record to support the BIA's finding that the INS met its burden of proving Baria married Patoc to obtain immigration benefits by clear, unequivocal and convincing evidence. The court recognizes that Baria and Patoc have given contradictory testimony regarding their respective motives to get married. Nonetheless, given the circumstantial evidence and the immigration judge's credibility determinations, this factual dispute does not prevent the court from concluding that substantive evidence supports the BIA's decision. *Espinoza–Ojeda supra; Yaldo supra.* Since the findings below are supported by reasonable, substantial and probative evidence, the court affirms the decision of the BIA.

## CONCLUSION

For the reasons given, the court GRANTS the government's motion to amend motion to consider submission on the record and GRANTS government's motion for summary judgment.

IT IS SO ORDERED.