MATTER OF PERALTA

In DEPORTATION Proceedings

A-11811262

*Decided by Board July 19, 1962*

Where there was nothing in the record contradicting the respondent's U.S. citizen
father's testimony that his wife by a previous undissolved marriage (1913)
was not known to him to be living for the space of at least 7 successive years
immediately preceding his subsequent marriage in the Philippine Islands in
1929, the subsequent marriage is regarded as valid under the then existing
Philippine Marriage Law (General Order No. 86 of Dec. 18, 1899, as amended).
Accordingly, respondent, issue of the second marriage, who was born in the
Philippine Islands on August 9, 1934, is legitimate and his claim to derivative
citizenship is established, the administrative adjudication of respondent's
United States citizenship, evidenced by the issuance to him of a United States
passport and his admission as a citizen on Oct. 20, 1957, not having been
overcome by clear, unequivocal and convincing evidence.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered with-
out inspection.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable
at time of entry—no immigrant visa.

The case comes forward on appeal from the order of the special
inquiry officer dated April 17, 1962, finding the respondent to be an
alien and deportable on the lodged charge stated above, granting him
the discretionary relief of voluntary departure in lieu of deportation
with the further order that if he failed to depart as required, the
privilege of voluntary departure would be withdrawn and the respond-
ent deported from the United States to the Philippines on the lodged
charge.

The respondent's father, Marcus Peralta, was born in the Philip-
pines on April 23, 1883. He enlisted in the United States Navy on
August 19, 1908, in the Philippines and entered the United States
about December 1909. He married one Josephine Susman on May 3,
1913, in Brooklyn, New York, and on November 11, 1918, he filed an
action for divorce in the Superior Court, Kings County, New York,

43

which, however, was not prosecuted to a final conclusion and no decree thereon was entered. On November 17, 1920, the respondent's father was naturalized as a United States citizen. He was retired from the Navy on December 27, 1928, and then returned to the Philippines where he has since lived. On September 25, 1929, he married Felipa Garduque, a native and citizen of the Philippines. The respondent is the issue of that marriage, born August 9, 1934, at Pasuquin, Ilocos Norte, Philippines. He was admitted to the United States at the port of Seattle, Washington, on October 20, 1957, upon his claim that he was a citizen of the United States. The record itself does not disclose what document the respondent presented upon his entry into the United States but the brief of counsel sets forth that he presented a United States passport issued through the American Consulate General in Manila, Philippine Islands. The issue in the case is the alienage of the respondent. The Service contends that he did not derive United States citizenship at birth [1] because he was an illegitimate child, inasmuch as the respondent's father had a prior undissolved marriage at the time of his marriage to the respondent's mother.

The record establishes that the respondent's father was first married in Brooklyn, New York, on May 3, 1913; that he married the respondent's mother in the Philippines on September 25, 1929; that his first marriage has never been dissolved; and that his first wife is still alive. The law governing the validity of marriages in the Philippines at the time of the marriage of the respondent's father and mother was a Marriage Law designated as General Orders No. 68 of December 18, 1899, as amended by General Order No. 70, promulgated by the United States Military Governor of the Philippine Islands which provided in section III as follows:

A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning * * *(2) unless such former husband or wife was absent, and not known to such person to be living for the space of seven successive years immediately preceding such subsequent marriage, or was generally reputed and believed by such person to be dead at the time such subsequent marriage was contracted; in either of which case the subsequent marriage is valid until its nullity is adjudged by a competent tribunal.[2]

---

[1] Section 1993, U.S.R.S., as amended by Act of May 24, 1934; section 301(a)(7) of the Immigration and Nationality Act.

[2] This provision has been substantially re-enacted in Article 83 of the Civil Code of the Philippines (Republic Act No. 386 effective June 1950) which provides as follows: Any marriage subsequently contracted by any person during the lifetime of the first spouse of such person with any person other than such first spouse shall be illegal and void from its performance, unless: (1) the first marriage was annulled or dissolved: or (2) the first spouse had been absent for seven consecutive years at the time the second marriage without the spouse present having news of the absentee being alive, or if the absentee, though he

The file contains the testimony of the petitioner's father taken on June 24, 1961, at Pasuquin, Ilocos Norte, Philippines, in connection with the citizenship case of the respondent by a Consular Assistant with the assistance of an interpreter (Exhibit 2). He testified that he had previously been married at Brooklyn, New York, to Josephine Susman on May 3, 1913; that he filed an action for divorce against her on November 11, 1918, in the Supreme Court, County of Kings, State of New York, and that he was never informed of the results of this action; that he received information from the sister of his first wife that she had died but that he no longer remembered when she had informed him by letter or where and when his first wife had died. He further stated he had a son by his first marriage, born in Brooklyn, New York, about 1915 whom he had never seen because he was always at sea; and that he had last seen his first wife in Brooklyn on Armistice Day, November 11, 1918, when he passed her residence and saw her at the third floor window; that he waved but that they did not talk to each other and he proceeded to Philadelphia that day. He further stated that since the last time he saw her he never corresponded with her even while the divorce action was pending and that he only communicated with his lawyer; that the last time he heard that his first wife was still living was when he saw her on that Armistice Day in 1918; that he continued in the service of the United States Navy until his discharge on December 27, 1928, and that he left the United States at the port of San Francisco about 1928 when he proceeded to the Cavite Naval Station in the Philippines. He stated he never departed from the Philippines since 1928.

The file also contains a report of investigation dated August 1, 1960, which indicates that the petitioner's first wife was located in Brooklyn, New York, and was interviewed on July 25, 1960, at which time she stated that her marriage to the respondent's father had never been legally terminated; that about *1940* she and her husband separated by mutual consent and that she has not seen nor heard from him since and has no idea of his whereabouts. A birth certificate in the name of Herman Peralta, the issue of the first marriage, revealed he was born February 21, 1914, contained his parents' names and disclosed that on September 17, 1940, a corrected certificate was filed; that in

has been absent for less than seven years, is generally considered as dead and believed to be so by the spouse present at the time of contracting such subsequent marriage, or if the absentee is presumed dead according to Articles 390 and 391. The marriage so contracted shall be valid in any of the three cases until declared null and void by a competent court. (Article 390 states that after an absence of seven years, it being unknown whether or not the absentee still lives, he shall be presumed dead for all purposes except for those of succession, and shall not be presumed dead for the purpose of opening his succession until after an absence of ten years; Article 391 is not relevant.)

the application for correction of the certificate of birth, which was signed by Josephine Peralta on August 24, 1940, it is indicated that the father of the child was deceased. The petitioner's first wife stated she did not remember making this statement and that it must have been a mistake at the time of the application for correction of the birth certificate was made out.

The special inquiry officer concludes that it is quite clear from the evidence that it was the respondent's father who had absented himself, not his wife; and no showing has been made that she was "generally reputed" to be dead at the time of his second marriage; and finds that the respondent's father's second marriage does not come within the terms of the exception in the Philippine statute and concludes that the marriage was not a valid one and that consequently the respondent was illegitimate at birth. There is no indication of what measure of burden of proof was used in reaching this conclusion.

Ordinarily, in deportation proceedings, the Service must establish its case by a preponderance of reasonable, substantial and probative evidence. The respondent in this case has already been adjudicated a United States citizen by the issuance to him of a United States passport by the Department of State. True, this determination of citizenship is not *res judicata* and does not have the standing of a judgment. The determination as to his citizenship may be rebutted by a showing that the decision was a result of fraud or error. The instant case arises in the Ninth Federal Judicial Circuit in which the leading case is that of *Lee Hon Lung* v. *Dulles*.[3] The plaintiff in that case had been admitted as a United States citizen by a Board of Special Inquiry in 1924, a proceeding which the Government contended was too informal and summary to be trustworthy. After reviewing the cases in favor of and against the opposing contentions, the court adopted the rule of the Third Circuit as expressed in the case of *Delmore* v. *Brownell*,[4] to the effect that "once the United States has determined that an individual is a citizen, it should be required to disprove its own determination by 'clear, unequivocal and convincing evidence' * * *." The court in effect held that the standard of proof applicable in denaturalization proceedings applied and that where one has, over a long period of years, acted in reliance upon a decision of a Board of Special Inquiry admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal and convincing.

In the instant case, in order to establish that the second marriage was valid, it was necessary to prove that the former spouse was absent and not known by the person married to be living for the space of seven

[3] 261 F. 2d 719 (1958).
[4] 236 F. 2d 598.

consecutive years immediately preceding the subsequent marriage, or was generally reputed and believed by such person to be dead at the time such subsequent marriage was contracted, in either of which cases the subsequent marriage remained valid until its nullity was adjudged by a competent tribunal. The father, through whom the respondent claims citizenship, has admitted being previously married in 1913 in Brooklyn. However, he has testified that he last saw his first wife in 1918 and that he has never heard from her since, although he made efforts to obtain information about her and that he received information from her sister that she was dead. The father has testified that he never saw his first son, Edward, who was born about 1915, because he was always at sea. He instituted a divorce action against his first wife, on the ground of adultery, on November 11, 1918, but failed to prosecute this action. By coincidence, the same date of November 11, 1918, is the last time the respondent's father saw his first wife. There is nothing in the record that contradicts this affidavit by the respondent's father, to the effect that he had not heard nor seen his first wife since 1918. His second marriage occurred in the Philippines on September 25, 1929. It is to be remembered that the respondent's father was a native of the Philippine Islands and served on Naval vessels from 1908 until his discharge in 1928. The report of the testimony from the first wife, which is not given verbatim, discloses an obvious error in her statement, to the effect that she and her husband separated by mutual consent in *1940*, since it is obvious that they had been separated for many years previously. The information in the application for correction of the birth certificate of her son in 1940 to the effect that the father of the child was deceased is not satisfactorily explained. In any event, none of the information contradicts the testimony of the petitioner's father that his former wife was not known by him to be living for the space of at least seven successive years immediately preceding his marriage to the respondent's mother.

Upon a full consideration of the record, it is concluded that the evidence establishes compliance with the Philippine Marriage Law, General Order No. 86 of December 18, 1899, as amended by General Order No. 70, to establish a lawful marriage, whose validity has not been nullified by the judgment of a competent tribunal. Under the *Leyes de Partidas* [5] where two women innocently and in good faith are legally united in holy matrimony to the same man, their children born will be regarded as legitimate children; the good faith of all the parties will be presumed until the contrary is positively proved. The children born of the second marriage under Spanish law are entitled to

---

[5] Law, Title 13, Partida 4.

all the rights of a legitimate wife and children, even though a deception was practiced.[6]

Upon a full consideration of the evidence, the validity of the marriage, the legitimacy of the respondent and his claim to derivative citizenship have all been established. The ultimate adjudication of citizenship, as evidenced by the issuance of a United States passport and the admission of the respondent on October 20, 1957, has not been overcome by even a preponderance of evidence, much less the strict standard of clear, unequivocal and convincing evidence which represents the rule in the Ninth Federal Judicial Circuit. We conclude that alienage has not been established. The appeal will be sustained and the proceedings terminated.

**ORDER:** It is ordered that the appeal be sustained and the proceedings terminated.

---

[6] *Lao* v. *Dee Tim,* 45 Phil. 739; *Francisco and Marcelo* v. *Juson,* 60 Phil. 442.

48