802 F.2d 458
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MICHAEL LUCKIE, CLAUDETTE LUCKIE, MARSHAL LUCKIE, and MIGUEL
LUCKIE, Petitioners
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 85-3521.
 United States Court of Appeals, Sixth Circuit.
 Aug. 25, 1986.
 
 BEFORE: MARTIN and GUY, Circuit Judges, and SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioners appeal from a decision of the Board of Immigration Appeals affirming the earlier decision of an immigration judge finding them deportable. Petitioners are natives and citizens of Guyana who entered the United States via Canada at Detroit, Michigan on August 1, 1981. Petitioners concede that they entered the United States without inspection and without immigrant visas or other valid entry documents.
 
 
 2
 On appeal, petitioners claim that the deportation hearing was not conducted in a fair and impartial manner and that the burden of proof was improperly shifted from the government to them. They further claim that the deportation order was not supported by "reasonable, substantial and probative" evidence. Lastly, they claim that the deportation order was based on charges not stated in the order to show cause which initiated the deportation proceedings and hearing.
 
 
 3
 Upon a review of the completerecord, including the transcript of the hearing and all exhibits introduced at the hearing, we conclude that there were no violations of petitioners' due process rights in these proceedings and, further, that the finding that petitioners were deportable is supported by clear, convincing, and unequivocal evidence. Accordingly, we affirm.
 
 I.
 
 4
 There is no dispute as to the facts surrounding petitioners' entry into the United States. Petitioners are English speaking and told in their own words at the hearing what occurred. Petitioners left Guyana in July of 1981, allegedly to take a vacation trip to Canada. After a short stay in Toronto, they travelled by bus to Windsor, Ontario, Canada, where they bought boat tickets to Bob-Lo Island, an American owned amusement park, located in Canadian waters near Detroit, Michigan.[1] Instead of returning to Canada, however, they claim to have bought tickets for Detroit from an unidentified man who approached them at random. Petitioners had no visas or other U.S. entry documents in their possession nor did they pass through inspection in Detroit.
 
 
 5
 Petitioners stated that the sudden decision to come to Detroit rather than return to Canada was for the purpose of visiting a sister-in-law who lived in Cleveland, Ohio. Michael Luckie testified that the family did not intend to stay in the United States. Once in Cleveland, Michael Luckie got a job in a machine shop and secured a social security card. His sister-in-law, who became a United States citizen during the time petitioners were in Cleveland, offered to sponsor them and filed a Form I-130 on their behalf in March of 1982. Just prior to this, however, on January 20, 1982, the petitioners were notified that they had been placed in deportation proceedings. A February 12, 1982 hearing was scheduled but adjourned at petitioners' request to June 15, 1982. At the conclusion of the June 15, 1982 hearing the immigration judge found petitioners deportable as charged, but granted petitioners' request for voluntary departure. An appeal to the Board of Immigration Appeals (Board) followed. On July 2, 1985, the Board upheld the immigration judge's decision and dismissed the administrative appeal. This petition for review followed.
 
 II.
 
 6
 Although petitioners frame their issues somewhat differently in this appeal than they did before the Board, the arguments presented are essentially the same. Petitioners argue it was error to find that at the time they entered the country they did so with the intention to remain permanently in the United States. This argument misperceives both the immigration laws and the thrust of the proceeding initiated against petitioners.
 
 
 7
 The order to show cause issued to initiate these proceedings charged that petitioners: (1) were natives of Guyana; (2) were citizens of Guyana; (3) entered the United States at Detroit, Michigan on or about August 1, 1984; (4) entered with the intention to remain permanently in the United States; and (5) were not in possession of an immigrant visa or other document required of aliens for admission to the United States or for permanent residency. The order to show cause went on to further state:
 
 
 8
 AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law: Section 241(a)(1) of the Immigration and Nationality Act, in that, at time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who are immigrants not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document and not exempted from the possession thereof by said act or regulations made thereunder, under sec. 212(a)(20 of the act.
 
 
 9
 (App. 9.)
 
 
 10
 At the time of the initial hearing petitioners admitted items 1, 2, 3, and 5 charged in the show cause, thus making the only contested issue at the time of the hearing the intention of petitioners at the time of entry. It is on this issue that the petitioners claim the government's proofs were deficient and that the burden of proof was impermissibly shifted to them. What petitioners' argument overlooks, however, is the presumption that is found in the immigration laws relative to aliens. 8 U.S.C. Sec. 1184(b) provides that: "Every alien shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to non-immigrant status under Section 1101(a)(15) of this title."[2] By common definition, an immigrant is one who intends to take up permanent residence in the United States. By legal definition, however, an immigrant is every alien who does not fall within one of the exceptions set forth in 8 U.S.C. Sec. 1101(a)(15).
 
 
 11
 At the hearing petitioners testified that they were only coming to the United States to visit a relative and thus they were coming on a pleasure trip and were not immigrants. The deficiency in this argument is that the law considers them to be immigrants unless and until at the time of application for a visa they establish to the satisfaction of the consular officers that they are entitled to non-immigrant status. Since petitioners completely avoided the formality of ever applying for a visa and entered this country without any entry documents whatsoever, they were presumed, under the law, to be immigrants. Since they were presumed to be immigrants, they were required to have in their possession "an immigrant visa or other document required of aliens . . . ." (Order to Show Cause.) This being the case, the government made a prima facie case for deportation when petitioners admitted items 1, 2, 3, and 5 of the order to show cause. The government did not have to offer any specific proof of their intent since their status as immigrants was presumed under the law. Since there was never any refutation of the government's prima facie case, the decision of deportability was supported by clear, convincing, and unequivocal evidence. Woody v. INS, 385 U.S. 276, 286 (1966).[3]
 
 
 12
 Little time need be spent on petitioners' claim that the immigration judge was not fair and impartial. There is no doubt that he indicated he did not believe Michael Luckie's testimony offered at the hearing, but that is understandable since the version offered by Luckie of what occurred was nothing short of incredible. The method of entry he chose into the United States from Canada, via Bob-Lo Island, is a well-known illegal entry route. His "chance meeting" with a person who offered to sell him a ticket to Detroit, whereupon he suddenly decides with his whole family to visit a relative in Cleveland, is simply not believeable. There was no error committed by an immigration judge who indicated displeasure at sitting and listening to testimony given under oath which is so obviously fabricated.
 
 
 13
 Finding no merit in petitioners' allegations of error, we AFFIRM.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Bob-Lo Island can be reached by boat from amherstburg, Ontario, Canada or Detroit, Michigan
 
 
 [2]
 8 U.S.C. Sec. 1101(a)(15)(B) provides: "The term 'immigrant' means every alien except an alien who . . . [has] a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business . . . or pleasure."
 
 
 [3]
 Petitioners also claim that they were ordered deported as a result of a finding on an uncharged violation, i.e., entering the United States without passing through inspection. Although the immigration judge does make reference to this fact since petitioners admitted the same at the hearing, it is clear that his decision is not based on this finding