JOURNAL ENTRY and OPINION
{¶ 1} Appellant Devon Byrd was charged with one count of rape following events that occurred on June 29, 1999. He was eventually convicted of sexual battery (R.C. 2907.03) after a jury trial and brings two assignments of error.
 {¶ 2} On June 29, 1999 at around 12:30 a.m., Byrd accompanied his friend Anthony Patton to the house of the victim, who was friends with Patton's girlfriend, Anna Nicholas ("Anna"). The victim was living at the apartment of her boyfriend, who was incarcerated at the time. The victim, who was seventeen at the time, had met Byrd once or twice before, but knew him only as "Tarnell Bunz." Sometime later, Patton and Anna left to get something to eat and were to return right away. The victim testified that she was not worried about being left alone with Byrd because he had never been mean to her before. Byrd told Patton that it would be all right if he stayed there rather than being driven home.
 {¶ 3} According to the victim, after Anna and Patton had been gone for half an hour, she gave Byrd a blanket so he could stay until Patton and Anna returned, closed her bedroom door and went to bed. The victim testified that around 5:30 a.m., she woke up with Byrd on top of her and with his penis inside her vagina. She testified that she did not consent to this. She told him to get off, which he did two minutes later. The victim stayed in the room and closed her bedroom door. The victim further testified that she did not have a phone and that she did not leave because of what happened to her when she was raped when she was fifteen years old. (She had been tied up and otherwise mistreated for three days.)
 {¶ 4} Anna and Patton did not return until around 12:30 p.m. Anna testified that the victim "looked like something was wrong with her," after which the victim told Anna that Byrd had raped her. When Anna confronted Byrd, he admitted having sex with the victim but said that it was consensual. The victim retrieved her boyfriend's gun, which had been kept in her bedroom closet. She testified that she was not sure if it was loaded.
 {¶ 5} Later that afternoon, the victim told her sister Melissa that Byrd had raped her. (Melissa had come over as planned to give the victim a ride to work.) Melissa confronted Byrd (and Patton). Melissa took the victim to a BP station around the corner to call the police and their mother. The police were at her house when she got back. She talked to them and then went to the hospital with her mother, where she was treated by nurse Janice Gonzalez. Gonzalez testified that the victim reported that she had been sexually assaulted. The victim was treated and discovered later that she was not pregnant but that she had contracted sexually transmitted diseases.
 {¶ 6} The victim originally named Tarnell Bunz as the man who had raped her. The police never found anyone by that name. Not until October of 2000 did she learn that the man's real name was Devon Byrd. Patton, trying to protect his friend, originally gave the police the name Tarnell Bunz. He eventually gave Anna his real name. Anna told the victim and the two of them reported the correct name to the police. Soon thereafter, the victim (and Anna) identified Byrd from a photo array brought by a detective.
 {¶ 7} At the close of the state's evidence, Byrd moved the court, pursuant to Crim.R. 29, to dismiss the charge. The court denied the motion and Byrd put on his defense. Byrd testified that he did have sex with the victim, but that it was consensual and, in fact, initiated by the victim around 5:30 a.m.
 {¶ 8} "Assignment of Error No. I: The evidence was insufficient as a matter of law to convict appellant of a violation of Ohio Revised Code2907.03, Sexual Battery."
 A. {¶ 9} "When a defendant challenges the legal sufficiency of the state's evidence, `the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Herring (2002), 94 Ohio St.3d 246, 252, (emphasis sic.), quoting Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.
 {¶ 10} Further,
 {¶ 11} "On review for sufficiency, `the weight and credibility of the evidence are left to the trier of fact.' State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825, citing State v. DeHass
(1967), 10 Ohio St.2d 230, 39 Ohio Op.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. `This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. at 318-319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573, quoting Woodby v. Immigration Naturalization Serv. (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362, 367." Herring at 253.
 {¶ 12} Byrd was convicted of sexual battery, a violation of R.C. 2907.03, which reads in relevant part:
 {¶ 13} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 14} "(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution."
 B. {¶ 15} Here, "after viewing the evidence in the light most favorable to the prosecution," we conclude that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Herring.
 {¶ 16} Byrd was not the spouse of the victim. Further, the victim testified that she awoke to find Byrd on top of her with his penis inside her. When she asked him to get off, he did not do so for two minutes. The victim told Anna, her sister, her mother and the police as soon as she saw each of them that Byrd had raped her. The court defined "coerce" as "to compel by force, pressure, threat or other means." Certainly there is sufficient evidence that Byrd knowingly coerced the victim to submit to sexual conduct through the victim's testimony that he was inside her when she awoke and that he did not immediately stop when asked.
 C. {¶ 17} The jurors believed the victim's story and disbelieved Byrd's. On a sufficiency of the evidence review, this court does not weigh the evidence. We merely decide whether there was sufficient evidence so that any juror could conclude that the defendant was guilty of all elements beyond a reasonable doubt. Here, that standard was met and the argument is not well taken.
 {¶ 18} "Assignment of Error No. II: The trial court's instructions to the jury regarding sexual battery constituted reversible error."
 A. {¶ 19} Byrd argues that the court's jury instructions constituted reversible error because they were inconsistent and thereby could have confused the jurors. The relevant jury instructions are as follows:
 {¶ 20} "The defendant is charged with rape. Before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant engaged in sexual conduct with [the victim], and the defendant purposely compelled her to submit by force or threat of force.
 {¶ 21} "* * *
 {¶ 22} "Purpose. Having a purpose to prevent resistance by force or threat of force is an essential element of the crime of rape.
 {¶ 23} "Result. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to prevent resistance by compelling the victim to submit by the use of force or threat of force.
 {¶ 24} "Force. Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing.
 {¶ 25} "* * *
 {¶ 26} "If you find the State proved beyond a reasonable doubt all the essential elements of the offense of rape as charged in the indictment, your verdict must be guilty according to your findings.
 {¶ 27} "If you find the State failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of rape as is charged in the indictment, your verdict must be not guilty according to your findings.
 {¶ 28} "In addition, you must determine whether or not the defendant compelled [the victim] to submit by the use of force or threat of force, * * *. If the verdict is not guilty, you will not be required to make these additional findings.
 {¶ 29} "* * *
 {¶ 30} "However, if you find that the State failed to prove beyond a reasonable doubt all the essential elements of rape, then your verdict must be not guilty of that offense. And, in that event, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of sexual battery.
 {¶ 31} "* * *
 {¶ 32} "The offense of sexual battery is distinguished from rape by the absence or failure to prove the element of force. Before you can find the defendant guilty of sexual battery, you must find beyond a reasonable doubt that * * * the defendant engaged in sexual conduct with * * * [the victim], and the defendant knowingly coerced her to submit by any means that would prevent resistance by a person of ordinary determination.
 {¶ 33} "Knowingly. A person acts knowingly, regardless of purpose, when he is aware his conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Knowingly also means a person is aware of the existence of the facts, and his acts will probably cause a certain result or be of a certain nature."
 {¶ 34} Finally, the jury was given verdict forms. With these, the jury was to decide (1) whether Byrd was guilty of rape; (2) if guilty of rape, whether Byrd compelled the victim to submit by force or threat of force; and (3) if not guilty of rape, whether Byrd was guilty of the lesser included offense of sexual battery.
 B. 1. {¶ 35} The crux of Byrd's argument is the alleged inconsistency of (1) the court's instruction that "the offense of sexual battery is distinguished from rape by the absence or failure to prove the element of force" and (2) its definition of "coerce," which the court said, "means to compel by force, pressure, threat, or other means." Specifically, Byrd argues that because the definition of "coerce" includes "force," the jury would be confused about what needed to be proved for the lesser included offense of sexual battery. Byrd relies on State v. Tolliver (1976),49 Ohio App.2d 258 in support of his argument.
 2. {¶ 36} Tolliver does indeed have similar jury instructions to the case under review. Tolliver, contrary to Byrd's assertion however, does not stand for the proposition that "the trial court's instruction" is erroneous if it states "that the difference between rape and sexual battery is absence or failure on the part of the State to prove force or threat of force."
 {¶ 37} In Tolliver, the court held that "[t]he phrase `coerces the other person to submit by any means,' * * * does not exclude force or the threat of force[,]" and that the crucial distinction between rape and sexual battery is not force, but the mental state of the defendant. See, also, State v. Wilkins (1980), 64 Ohio St.2d 382, 386-387, where the Supreme Court included "force" within the definition of "coercion" ("It is possible for a person to compel another to engage in sexual conduct by force or threat of force knowingly but not purposely. A person could subjectively believe that there is consent where there is none, and in using his strength could coerce another to submit by force.").[1]
 3. {¶ 38} Therefore, the trial court's definition of "coerce" is correct. However, the court's instructions that "[t]he offense of sexual battery is distinguished from rape by the absence or failure to prove the element of force" is incorrect. The prosecution may prove that force exists and still prove that sexual battery was committed if the prosecution also proves that the defendant used force knowingly as opposed to purposely. Here, the court's instruction that the jury determine whether Byrd used force only after they determined whether he was guilty of rape puts the cart before the horse.
 {¶ 39} Because the jury instructions were so confusing, we hold that the appellant did not receive a fair trial. We therefore reverse the conviction of sexual battery[2] and remand to the trial court for proceedings consistent with this opinion.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The 1974 Committee Comment to H 511 (which eventually became R.C.2907.03) states that "sexual conduct by coercion * * * is somewhat broader than sexual conduct by force[.]" See, also, State v. Gorny (May 5, 1994), Cuyahoga App. No. 64261; State v. Frigic (Dec. 31, 1992), Cuyahoga App. No. 61509; In re: Kevin Jordan (Sept. 12, 2001), Lorain App. No. 01CA007804.
[2] The finding by the jury of not guilty on the count of rape stands. Further, through this opinion, this court does not reach the issue (if any) of jeopardy as to the sexual battery charge.